**James A. TRAPP, d.b.a. Trapp Realty, Respondent,**

v.

**R–VEC CORPORATION, Respondent,**

**David C. Tjosvold, et al., Appellants,**

**No. C8–84–563.**

Court of Appeals of Minnesota.

Dec. 18, 1984.

Edward J. Hance, Minneapolis, for James A. Trapp, d.b.a. Trapp Realty.

Frank Abramson, Minneapolis, for R-Vec Corp.

Steven B. Nosek, Larry B. Ricke, Wagner, Johnston & Falconer, Ltd., Minneapolis, for David C. Tjosvold, et al.

Heard, considered and decided by WOZNIAK, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

Respondent Trapp brought this action for recovery of a real estate commission against respondent R-Vec Corporation and against appellants in 1981. R-Vec then cross-claimed against appellants David C. Tjosvold and Wilson Industries, Inc. (now known as Yukon Energy Corp.) demanding indemnity for any liability R-Vec might have to Trapp.

Upon appellants' motion the trial court severed trial on the claim and cross-claim. The trial court found R-Vec liable to Trapp for $21,450.00 in real estate commissions. Judgment was entered on May 12, 1983. The parties then tried R-Vec's cross-claim against appellants. The trial court held that appellants must indemnify R-Vec for its liability to Trapp. Appellants moved for amended findings or, alternatively, a new trial. The trial court denied that motion. Appellants now appeal from denial of their motion for a new trial.

## FACTS

On June 4, 1979, respondent-plaintiff James Trapp d/b/a Trapp Realty Co., and respondent-defendant R-Vec entered into a real estate listing agreement for sale of an improved commercial property in Blaine, Minnesota. The agreement provided that Trapp would be entitled to a commission for sale of the property to any prospective purchaser he located as long as the sale occurred within six months following termination of the listing agreement. During the term of the listing agreement, appellant Wilson negotiated to purchase the Blaine property but no sale took place.

On December 3, 1979, the date the listing agreement expired, R-Vec voluntarily petitioned for protection under Chapter 11 of the Bankruptcy Code. On March 31, 1980, while R-Vec was in bankruptcy and before Trapp's right to a commission expired, R-Vec agreed to sell its property to Wilson on substantially different terms than initially discussed. The purchase price was $629,-000.00. The Bankruptcy Court authorized the sale on April 16, 1980. Trapp did not participate in the negotiation for the sale nor did he provide any services to R-Vec after December 3, 1979.

The purchase agreement contained the following provision which is the focus of this dispute:

> Article V—*Broker Commission.* Wilson and Tjosvold agree to indemnify and hold R-Vec harmless against the claim for payment of any real estate commission due James Trapp or Trapp Realty Co.

Trapp's attempts to recover his commission led to a complicated procedural morass. On June 2, 1980, Trapp filed a proof of claim with the Bankruptcy Court claiming entitlement to $31,450.00 as commis-

sions under the listing agreement and asserting priority over other creditors. In late 1980 R-Vec formulated its reorganization plan and submitted it for approval. Under the plan Trapp's claim was classified as an unsecured claim. In December 1980 R-Vec began an adversary proceeding against appellants for the $31,450.00 commission owed to Trapp. Trapp filed papers to intervene in the action alleging he was a third-party beneficiary to the R-Vec/Wilson purchase agreement.

The Bankruptcy Court set a hearing to review the plan for reorganization in February 1981. Five days before the hearing Trapp filed an objection to the plan. At the hearing, however, Trapp and R-Vec submitted a settlement to the court providing that $10,000.00 of Trapp's claimed $31,-000.00 commission would be given priority. Transcript of the proceeding contains this discussion between the court and Trapp's attorney Mr. Hance:

> THE COURT: Is [Trapp] waiving any claim for commissions over and above $10,000?
>
> MR. HANCE: He is agreeing that he will not seek additional payment from the debtor, but rather will seek as sole and exclusive remedy to collect from Tjosvold and Wilson under the terms of the indemnity agreement.
>
> THE COURT: Directly against them?
>
> MR. HANCE: Directly against them but through R-Vec, R-Vec, of course, agreeing that he may intervene in that adversary proceeding, and R-Vec agreeing that they will join him as a claimant in that adversary proceeding, R-Vec seeking to recover the $10,000 they have paid as a priority claimant, and Trapp seeking to recover the remaining—

Hance then withdrew Trapp's objection to the plan based upon that agreement. The Bankruptcy Court confirmed the plan several weeks later. It did not provide for survival of Trapp's claim beyond the $10,-000.00 settlement amount.

The intent of the parties, that Trapp would intervene in the adversary proceeding against appellants, was frustrated when the Bankruptcy Court dismissed R-Vec's adversary claim against appellants for failure to state a claim. It held that the provision on commissions in Article V of the R-Vec/Wilson purchase agreement was an agreement to indemnify loss and not an agreement to assume liability. Since R-Vec's complaint alleged only liability the court found it failed to state a claim. Since there was no action remaining, Trapp's motion to intervene was denied.

In June 1981 Trapp sought relief against both R-Vec and appellants in Anoka County District Court alleging appellants were liable under Article V of the purchase agreement for the remaining amount of the commission, $21,450.00. R-Vec filed the cross-claim at issue here in July 1981 against appellants. The trial court dismissed Trapp's direct claim against appellants. Appellants thereafter successfully moved the court to sever the trial on Trapp's claim against R-Vec from the trial of R-Vec's cross-claim against them. The trial court found that Trapp's claim against R-Vec was not discharged because the sale occurred after the bankruptcy petition was filed. It further found that the settlement agreement did not release R-Vec from liability for the commission. Judgment was entered against R-Vec in the amount of $21,450.00 on May 12, 1983.

Trial of this matter, R-Vec's cross-claim against appellants, was held on November 15, 1983. The trial court found that the May 12, 1983 judgment determined that R-Vec was liable to Trapp and that R-Vec was entitled to indemnity from appellants. This appeal followed.

## ISSUES

1. Does the indemnity provision obligate third-party defendants to indemnify defendant even though defendant has suffered no actual loss?

2. Is plaintiff's claim for commission entitled to priority as an administrative expense of the debtor in possession under the bankruptcy code?

3. Is plaintiff's judgment against defendant void under federal law because the claim upon which it was based was discharged in bankruptcy?

## ANALYSIS

### 1. Interpretation of the Indemnity Contract

■ In general, an indemnitor's obligation to indemnify only arises after the indemnitee has suffered actual loss or damage. *Aetna Casualty and Surety Co. v. Bros*, 226 Minn. 466, 469, 33 N.W.2d 46, 48 (1948); 9A Dunnell Minn. Digest *Indemnity* § 4340 (3d ed. rev. 1977). The Minnesota Supreme Court does not apply this rule to all indemnity contracts:

> However, this general rule that loss must be first incurred is not applicable to all types of indemnity contracts. The entire rule is stated in 41 Am.Jur.2d, Indemnity, § 28, as follows:
>
> > "The necessity for actual damage to the indemnitee as a condition to the liability of the indemnitor depends upon the terms or conditions contained in the contract, actual damage being required in the case of a strict contract of indemnity against *loss or damage*, but none in the case of indemnity against mere *liability*." (Italics supplied.)
>
> \* \* \*
>
> When the indemnity contract is one against mere liability, an action may be brought as soon as the liability is legally imposed, e.g., when judgment is entered.

*Christy v. Menasha Corp.*, 297 Minn. 334, 339, 211 N.W.2d 773, 776 (1973).

In *Christy* the court found the contract to be one for indemnity against liability.

> In the present case, [the indemnitor], in substance and effect, agreed to assume entire responsibility for all damages or injuries to persons whether employees or otherwise and to save [the indemnitee] harmless from all such claims including claims for which the contractor may be, or may be claimed to be, liable. Thus, the agreement was to indemnify not just against loss or damage but also against mere claims, and a fortiori must be construed to be an indemnity agreement against accrued liability as well as against loss or damage. The indemnity agreement being one for claims, it should be assertable when such a claim is made and it was appropriate to do so in plaintiff's suit against [the indemnitor].

*Id.* at 339–40, 211 N.W.2d at 776–77 (footnote omitted).

■ Here the indemnity provision states appellants will "indemnify and hold R-Vec harmless against the *claim* for payment of any real estate commission due James Trapp." As in *Christy* this agreement is against a claim. The words "loss" and "damage" are not used. Thus, R-Vec is entitled to indemnity for liability and liability is established by a judgment. The next question is whether Trapp's judgment against R-Vec is valid.

### 2. Claim for Administrative Expense

Trapp argues that his claim was not discharged by the Bankruptcy Court because his claim has priority as an expense of administering the bankruptcy estate. 11 U.S.C. § 503(b)(1)(A) (1978) grants priority to "the actual, necessary costs and expenses of preserving the estate, including wages, salaries or commissions for services rendered after the commencement of the case."

■ To be an actual and necessary expense a claim must benefit the estate. *In re Dakota Industries, Inc.*, 31 B.R. 23, 26 (Bankr.D.S.D.1983). Performance under a contract must be given to the trustee or the debtor in possession, not the prepetition debtor, before priority will be given to a claim arising from a contract. *In re Baths International, Inc.*, 25 B.R. 538, 540 (Bankr.S.D.N.Y.1982). If a claimant's performance on a contract is complete when the debtor petitions for bankruptcy, the claim is treated as a general unsecured claim even though the debtor continues to benefit from the contract. *Id.* at 540–41.

This rule applies even though the claimant's right to collect does not accrue until after the debtor files bankruptcy. *In re J.M. Fields, Inc.*, 22 B.R. 861, 864–65 (Bankr.S.D.N.Y.1982) (broker who fully performs brokerage agreement before bankruptcy not entitled to priority for commission when debtor's sublessee later exercises option and creating right to commission).

■ Trapp performed no further services following R-Vec's chapter 11 petition. While his right to collect a commission arose after the petition, that alone does not give him priority status. Accordingly, Trapp's claim is a general unsecured claim.

### 3. Validity of Trapp's Judgment against R-Vec

The reorganization plan did not provide for the survival of Trapp's claim beyond the $10,000.00 settlement amount. Appellants claim confirmation of that plan discharged the balance of Trapp's claim by operation of law.

■ With limited exceptions 11 U.S.C. § 1141(d)(1) (1978) provides that confirmation of a reorganization plan discharges all debts arising prior to confirmation. *In re American Properties, Inc.*, 30 B.R. 239, 246 (Bankr.D.Kan.1983). Despite the absence of any provision in the plan concerning Trapp's claim R-Vec argues that Trapp's claim survived by virtue of language in a modified disclosure statement distributed to R-Vec's creditors. The disclosure statement, however, is only intended to provide information to creditors. *See* 11 U.S.C. § 1125 (1978). It does not have the legal effect of an order confirming a plan for reorganization. Accordingly, Trapp's claim was discharged by the Bankruptcy Court's order confirming the plan for reorganization.

Trapp's judgment against R-Vec thus rests on a claim discharged in bankruptcy. Appellants argue that Trapp's judgment is void under 11 U.S.C. § 524 (1978). Section 524 provides:

(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section * * 1141 * * * of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived;

11 U.S.C. § 524(a)(1) and (2). Notwithstanding this section, R-Vec argues that appellants are bound by the judgment because they had the opportunity to participate in the first part of the bifurcated trial but failed to do so.

■ Generally, indemnitors are bound by judgments against their indemnitees so long as they had the opportunity to participate in a third party's action against the indemnitee. *See Carlson v. Yellow Cab Co.*, 308 Minn. 293, 242 N.W.2d 86 (1976). While appellants did have the opportunity to participate in the first part of the bifurcated trial, this rule of state law does not defeat the clear congressional intent that a judgment "at any time obtained" on a discharged claim be void.

### DECISION

Since Trapp's judgment against R-Vec is void, the trial court incorrectly found appellants were obligated to indemnify R-Vec for its liability on that judgment. Reversed.