In re **PARAMOUNT PLASTICS, INC.,** Debtor.

**PARAMOUNT PLASTICS, INC.,** Plaintiff,

v.

**POLYMERLAND, INC.,** Defendant.

Bankruptcy No. 93–03857.
Adv. No. A93–09803.

United States Bankruptcy Court,
W.D. Washington,
at Seattle.

Sept. 9, 1994.

Wanda J.R. Nuxoll, Weinstein, Fischer, Riley, Erickson & Wolf, P.S., Seattle, WA, for Paramount.

Stuart P. Kastner, Montgomery, Purdue, Blankinship & Austin, Seattle, WA, for Polymerland.

## MEMORANDUM OPINION

SAMUEL J. STEINER, Chief Judge.

### FACTS AND BACKGROUND

This matter is before the Court on the defendant's motion for summary judgment of dismissal of the plaintiff's preference action. The primary issue, one of first impression in this District, is whether the debtor may pursue preference claims postconfirmation, where the plan contains no reservation of rights or retention of jurisdiction to prosecute such actions.

The debtor filed this Chapter 11 case on May 18, 1993. On its Statement of Affairs, the debtor listed payments to the defendant and a number of other creditors within the 90–day preference period. The debtor proposed an amended plan providing that creditors would be paid from the debtor's future net profits. Neither the plan nor the disclosure statement makes any reference to potential preference actions or avoidance actions generally, either in the description of creditor treatment, the means for implementing the plan, or the liquidation analysis. The jurisdictional paragraph provides that the Court retains jurisdiction to:

1. Determine the allowance or disallowance of claims and interests;

2. Determine all matters related to the Reorganization Plan until substantial consummation of the Reorganization Plan. . . .

. . . .

5. For such other matters as may be set forth in the order of confirmation.

Plan at p. 17.

Shortly before the confirmation hearing, the debtor, the creditors' committee, and their respective counsel met and discussed a number of matters, including preferences. Neither the defendant nor its counsel attended the meeting. The amended plan was overwhelmingly accepted by creditors, including the defendant, and it was confirmed on August 27, 1993. The order confirming the plan does not contain any provision for the retention of jurisdiction, or any mention of preference actions.

Following confirmation, the debtor filed a number of preference actions, including the one now before the Court. Ultimately the debtor defaulted on its obligations under the plan, and its secured lender foreclosed on its collateral. The creditors' committee filed an action to revoke confirmation and to lay claim to the preference recoveries. The debtor, committee, and the secured creditor resolved the matter by stipulating that a specific portion of the preference recoveries would be paid to the committee for distribu-

tion to unsecured creditors and the committee's counsel.

In support of its motion for summary judgment, the defendant asserts that the plaintiff's action must fail for lack of standing. As a corollary, the defendant contends that the complaint should be dismissed, since any recoveries will not inure to the benefit of the estate. In addition, the defendant asserts res judicata, equitable estoppel, and judicial estoppel. All of these theories center on the failure of the plan and disclosure statement to give notice of the debtor's intent to pursue preference actions, to direct the disposition of proceeds from such actions for the benefit of creditors, or to provide for the retention of jurisdiction for such purpose.

The Court granted the defendant's motion for summary judgment of dismissal on the basis that the debtor lacks standing as a matter of law, and it did not reach the substance of the defendant's other theories. Thereafter the debtor moved for reconsideration, alleging, in addition to facts already presented, that Polymerland's counsel conferred with counsel for the creditors' committee both before and after the meeting between the committee, the debtor, and their respective counsel. According to the affidavit of counsel for the committee, he communicated to the debtor the defendant's concerns and obtained certain concessions regarding the proposed treatment of unsecured creditors. After the meeting, he informed the defendant's counsel of his discussion with the debtor. Allegedly relying on this information and changes made in the plan, the defendant changed its vote to an acceptance. See Northrup Affidavit at p. 3.

### STANDARD FOR SUMMARY JUDGMENT

To prevail on a motion for summary judgment, the moving party must show by reference to pleadings, discovery, admissions, and affidavits, if any, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(a), (c), F.R.Civ.P.; Rule 7056, F.R.Bankr.P. If the moving party meets its burden, the burden of production then shifts to the nonmoving party, who must produce by admissible evidence "specific facts showing that there is a genuine issue for trial." FRCP 56(e). The moving party is entitled to a judgment as a matter of law if the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### DISCUSSION

Section 547(b) of the Bankruptcy Code provides the basis for a trustee's power to avoid preferential transfers. Pursuant to § 550(a), any recoveries resulting from avoided transfers are held for the benefit of the estate. Section 1107(a) confers on a debtor-in-possession the rights and powers of a trustee, including the power to prosecute avoidance actions on behalf of the estate. After confirmation of a plan, the ability of the trustee, the debtor, or other representative of the estate to enforce a claim once held by the estate is limited to that which has been retained in the plan. This is the import of § 1123(b)(3), which states that a plan may provide for:

(A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or

(B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest....

The statutory scheme and case law establish two conditions for a debtor's post-confirmation prosecution of avoidance actions. First, any recoveries must benefit the estate under § 550. Second, pursuant to § 1123(b)(3)(B), the plan must expressly retain the right to pursue such actions.

No legal dispute exists regarding the first element, although there is a factual dispute whether it has been met in this case. First, the plan provided for payment to creditors out of profits; hence the defendant asserts that any preference recoveries would ultimately inure to the benefit of the debtor. However, since the debtor was unable to perform its obligations under the plan, a

portion of the recoveries was in fact set aside for unsecured creditors and administrative claimants pursuant to the postconfirmation stipulation. It is not necessary to decide whether the plan or the stipulation provided sufficient benefit to creditors to satisfy this element, for the reason that the debtor cannot satisfy the second requirement of standing, i.e., the specific retention of preference actions in the plan.

■ Concerning the requirement of § 1123(b)(3)(B), this Court adopts the conclusion reached in *In re Mako, Inc.,* 120 B.R. 203, 209 (Bankr.E.D.Okl.1990), in which the Court stated as follows:

> Because the confirmation of a Chapter 11 Plan dissolves the bankruptcy estate and the rights and powers created under the Bankruptcy Code, the retention provision of § 1123(b)(3)(B) requires specific and unequivocal language of reservation. Without this language, the avoidance powers of the Trustee stemming from the Bankruptcy Code at §§ 544, 546, 547, 548, 549 and 550 perish and become unenforceable.

Cases that are in accord with *Mako* include *In re Harstad,* 155 B.R. 500 (Bankr. D.Minn.1993), and *In re Mickey's Enterprises, Inc.,* 165 B.R. 188, 193 (Bankr.W.D.Tex. 1994) (decided on the bases of res judicata and equitable estoppel). In both cases, the Courts expressed concern that, absent "specific and unequivocal" retention language in the plan, creditors lack sufficient information regarding their benefits and potential liabilities to cast an intelligent vote. *Harstad,* 155 B.R. at 509. The debtor attempts to distinguish *Harstad* on the basis that Paramount's creditors were made aware of it's intention to pursue preferences by virtue of the Statement of Affairs and the discussion with the committee shortly before the confirmation hearing. The Court rejects this argument, as it ignores § 1125, which requires the disclosure of "adequate information" to allow a claimant to make an informed judgment about the plan. 11 U.S.C. § 1125(a)(1). As stated by the Court in *Mickey's Enterprises,* "Under these circumstances, the Defendant was entitled to adequate information of what the Debtor's Plan provided *with regard to it* so it could make an informed decision as to

how to react to the Debtor's Plan." [Emphasis in original.] 165 B.R. at 193.

The debtor has cited several cases which it characterizes as disagreeing with *Harstad. In re Jennings,* 46 B.R. 167 (Bankr.E.D.Pa. 1985), does contain dicta to the effect that a debtor has no duty to disclose its intention to prosecute preference actions, and further that a general reservation of jurisdiction is sufficient. A review of the facts of the case reveals that the debtor-in-possession had commenced the preference action prior to confirmation. The plan provided for retention of jurisdiction for purposes of "[t]he determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes, or conflicts, *whether or not subject to action pending as of the date of confirmation,* between the Debtors and any other party, including but not limited to, *any right of the Debtors to recover assets pursuant to the provisions of the Code.*" (Emphasis in original.) *Id.* at 170. The order confirming the plan contained nearly identical language. The Court held that this language "expressly provided for retention of jurisdiction by the Bankruptcy Court over actions pending at the time of confirmation and actions commenced after the time of confirmation, and over any assets recovered as a result of these actions." *Id.*

The *Harstad* Court criticized *Jennings,* stating that it "is not controlling and simply wrong." 155 B.R. at 510. First, the *Jennings* Court ignored § 1123(b)(3)(B) and focused instead on § 1141(b), which provides that property of the estate revests in the debtor upon confirmation, except as otherwise provided in the plan or confirmation order.

> While section 1141(b) may aid [the Court] in determining what assets remain property of the estate, it has nothing to do with the retention of preference actions. [Citation omitted].... Congress specifically enacted section 1123(b)(3)(B) for that purpose. Any other interpretation of the Code would render section 1123(b)(3)(B) nugatory.

*Id.*

Further, *Jennings* is internally inconsistent on several points. For example, the

Court held on the one hand that a plan must expressly provide for the Court's retention of jurisdiction over preference actions, yet it accepted broad, nonspecific language in satisfaction of that requirement. Further compounding the problem, the Court stated that disclosure of a debtor's intention to pursue preferences is not necessary. For these reasons, this Court agrees with *Harstad*'s conclusion that "*Jennings* is not controlling and simply wrong." 155 B.R. at 500.

The remaining cases cited by the debtor do not support its position. In *Texas Consumer Finance Corporation v. First National City Bank,* 365 F.Supp. 427 (S.D.N.Y.1973), a case decided under the Bankruptcy Act, the order of confirmation did not specifically provide for retention of jurisdiction of the Bankruptcy Court. However, the plan provided for retention of jurisdiction and the continued prosecution of preference actions, as well as distribution of recoveries to creditors. The preference action being "an essential part of the plan itself," *Id.* at 431, the Court allowed it to proceed, notwithstanding the lack of specific language in the order.

In *In re Fogarty,* 114 B.R. 788 (Bankr. S.D.Fla.1990), the debtors counterclaimed in an action filed postconfirmation, seeking to use the Code's strong-arm powers to avoid the plaintiff's security interest. The Court dismissed the counterclaim on several grounds, including the fact that the debtors would have retained the benefits from a successful lien avoidance. The Court did not address the issue whether the lack of retention language in the plan precluded the debtor from pursuing its avoidance claim.

Finally, *In re Churchfield Management & Investment Corp.,* 122 B.R. 76 (Bankr. N.D.Ill.1990), involved a preference action which had been commenced preconfirmation. Pursuant to a settlement agreement in a separate matter, the trustee transferred the estate's claims, specifically including avoidance actions, to another entity for prosecution on behalf of the estate. The settlement agreement recited that the Bankruptcy Court would retain jurisdiction in order to implement the transfer of avoidance claims. The proposed terms of the settlement agree-

ment were incorporated into a plan, which was confirmed.

The primary issue was whether the assignee, who was neither the debtor nor the trustee, had standing to enforce a claim belonging to the estate. The Court held that § 1123(b)(3) permits the assignment, since pursuant to the plan, the assignee had been appointed and was pursuing the actions as a representative of the estate. Nowhere does the Court suggest that such an action could have been pursued had the authority to do so not been specifically retained in the plan.

█ This Court having agreed with *Mako* and *Harstad* that § 1123(b)(3)(B) requires that a plan contain "specific and unequivocal" language to support a debtor's standing to commence a preference action postpetition, the only remaining issue is whether the language contained in the debtor's plan satisfies the standard. The Court concludes that it does not. As previously indicated, the plan contains no reference to preference actions, either in the description of creditor treatment, the means for implementing the plan, the liquidation analysis, or the retention of jurisdiction. The most specific language in the jurisdictional paragraph relates to "allowance or disallowance of claims and interests," which the Court concludes does not encompass avoidance actions. Some courts have concluded that retention of the right to object to claims includes the right to pursue preferences. *See,* e.g. *In re Centennial Industries, Inc.,* 12 B.R. 99 (Bankr.S.D.N.Y. 1981). However, others have rejected that approach, concluding that it requires a contortion of the plan provisions, *Mako, supra* at 209; and that it disregards the distinction between objections to claims against the estate, which may be made by motion, and the pursuit of avoidance actions belonging to the estate, which require adversary proceedings. *In re Neptune World Wide Moving, Inc.,* 111 B.R. 457 (Bankr.S.D.N.Y.1990).

█ The defect in the debtor's plan is fatal to its standing to pursue the present action. The Court has already implicitly ruled that this defect is not cured by the disclosure of preferential payments in the debtor's State-

ment of Affairs or discussions with the creditors' committee.

In its motion for reconsideration, the debtor reiterates its original legal position and raises only one additional factual allegation, namely that defendant's counsel talked to counsel for the committee before and after his meeting with the debtor and debtor's attorney, that the defendant obtained certain concessions, and that it changed its vote thereafter. Based on these vague assertions, the debtor implies that the defendant changed its vote based on specific knowledge of the debtor's intent to file this action post-confirmation. There is no basis for such an inference, and the Court concludes that the new allegation does not constitute a material fact creating a genuine issue for trial.

Again, the problem inheres in the plan and its failure specifically and unequivocally to retain rights which can be exercised postconfirmation only in accordance with § 1123(b)(3)(B). For this and the foregoing reasons, the defendant's motion for summary judgment is granted, and the plaintiff's motion for reconsideration is denied.