In re GOODMAN BROS. STEEL DRUM CO., INC. a/d/b/a National Drum & Barrel Corp., Debtor.

Goodman Bros. Steel Drum Co., Inc., As Debtor and Debtor–in–Possession, Plaintiff,

v.

Liberty Mutual Insurance Company, Defendant.

No. 197–22269–260.
Adv. No. 199–1534–260.

United States Bankruptcy Court, E.D. New York.

May 3, 2000.

Jaffe & Asher, by Marshall T. Potashner, New York City, for Liberty Mutual Insurance Co.

## DECISION ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

CONRAD B. DUBERSTEIN, Chief Judge.

### MEMORANDUM OPINION

This is a motion by Liberty Mutual Insurance Company for judgment on the pleadings pursuant to Federal Rule of Bankruptcy Procedure 7012(b) and Rule 12(c) of the Federal Rules of Civil Procedure seeking an order of this Court to dismiss the complaint. The motion is denied.

### BACKGROUND

Goodman Bros. Steel Drum Co., Inc. ("Plaintiff," "Debtor" or "Goodman"), was engaged in the business of refurbishing and reconditioning steel drums. On October 31, 1997, it filed a petition for relief in this Court under Chapter 11, precipitated by fire that destroyed significant parts of its operating facilities and disrupted normal production. At the time of this fire loss, it was insured by Liberty Mutual Insurance Company, (hereinafter "Defendant" or "Liberty"), under a commercial multi-peril insurance policy. Prior to the petition date, Liberty made interim payments to Goodman on account of the fire loss. On or about October 24, 1997, Liberty made a further payment of $250,000.00 to Goodman, but upon authorization from Goodman it paid itself $98,606.85 on account of past-due insurance premiums.

Thereafter and during the course of its efforts to reorganize, the Debtor filed a disclosure statement and plan of reorganization. On October 12, 1999, it filed a Second Amended Disclosure Statement ("Disclosure Statement"), which was approved by this Court, and a Second Amended Chapter 11 Plan of Reorganiza-

Finkel Goldstein Berzow, Rosenbloom & Nash, LLP, by David J. Ciminesi, New York City, for debtor.

tion ("Plan"), which was confirmed by this Court on December 9, 1999.

After the Disclosure Statement was approved by this Court, and before the Plan was confirmed, the Debtor, as Plaintiff, commenced the instant adversary proceeding against Liberty on October 26, 1999. Although the Disclosure Statement made reference to the proposed proceeding,[1] the Plan did not refer to it, however the Plan did provide for the Court's retention of jurisdiction after confirmation.

### The Adversary Proceeding

The adversary proceeding complaint alleges two claims for relief: first, it seeks to avoid an alleged preference pursuant to 11 U.S.C. § 547, arising out of the payment made to Liberty in the sum of $98,606.85; and second, it seeks to recover that sum as an alleged setoff pursuant to 11 U.S.C. § 553.

Defendant has filed a motion for a judgment on the pleadings pursuant to Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 7012(b) and Rule 12(c) of the Federal Rules of Civil Procedure ("F.R.C.P."), and is asking the Court to dismiss the complaint on the grounds that: (1) Plaintiff lacks standing to assert the claims alleged; and (2) that the complaint is barred by res judicata. The issue before the Court is whether Plaintiff preserved and can pursue this adversary proceeding now that it is in the post-confirmation period.

### DISCUSSION

#### 1. Standard of Review

■■■ The Defendant is seeking dismissal of the complaint pursuant to F.R.C.P. 12(c), made applicable to the in-

stant bankruptcy proceeding by F.R.B.P. 7012(b). Rule 12(c) states:

> **(c) Motion for Judgment on the Pleadings.** After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

FED.R.CIV.P. 12(c). A motion for judgment on the pleadings is appropriate where a judgment on the merits can be issued based solely on the pleadings. *Chemical Bank v. Marcou (In re Marcou)*, 209 B.R. 287, 290 (Bankr.E.D.N.Y.1997). However, if the court considers materials outside of the pleadings, notice must be given to the parties and the motion will be treated as a summary judgment motion pursuant to F.R.C.P. 56. *Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49, 53 (2d Cir.1985). In the present case, the court will limit its scope of consideration to the pleadings and, as such, will treat the motion as it was presented, a motion for judgment on the pleadings, not a motion for summary judgment.

#### 2. Standing

■■■ Section 547(b) of the Bankruptcy Code[2] provides that "the trustee may avoid" a preference. 11 U.S.C. § 547(b). Similarly, under § 553(b)(1), the power to recover certain setoffs is also given to the trustee. 11 U.S.C. § 553(b)(1). The debtor-in-possession is granted, with certain

---

**1.** Goodman's Disclosure Statement specifically provided that, "The Debtor reserved the right to pursue an avoidance claim against Liberty Mutual under the stipulation of settlement. Any such action will be filed prior to confirmation and the Debtor anticipates that Liberty Mutual would rigorously defend same." (Debtor's Second Amended Disclosure Statement, dated October 7, 1999, at 40.)

**2.** All further statutory citations are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, unless otherwise noted, and will hereinafter be referred to only by the appropriate section number.

limitations, all of the same rights as a trustee pursuant to § 1107(a). 11 U.S.C. § 1107(a). It is under this statutory authority that a debtor-in-possession may pursue § 547 and § 553 claims on behalf of its estate. The question raised by Liberty in the instant motion, is whether the Plaintiff has retained the right, or standing, to pursue the claims set forth in the complaint subsequent to the confirmation of the Debtor's Plan.

Section 1123 of the Bankruptcy Code governs the contents of a chapter 11 plan. Section § 1123(b)(3)(A) and (B) sets forth the pertinent subjects that a plan may provide for:

§ 1123. Contents of plan....

(b) Subject to subsection (a) of this section, a plan may—...

(3) provide for—

(A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or

(B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest.

11 U.S.C. § 1123(b)(3)(A) & (B).

Case law is divided on how specific language of retention and enforcement must be under § 1123(b)(3)(B). Liberty relies on a number of cases in support of its opposition to the complaint. Before discussing the applicability of those cases, it is to be noted that one of Liberty's objections is the fact that it never received notice of the hearing on the approval of the Disclosure Statement and on confirmation of the Plan. Liberty argues that it had the right to receive such notice inasmuch as it was referred to in the Disclosure Statement as the party against which the Debtor intended to proceed and which is the subject of the present adversary proceeding.

Goodman's position is that it provided notice of the action to its creditors prior to confirmation. The applicable rule which governs the proper notice is set forth in Rule 3017(a) of the F.R.B.P. which directs as follows:

... the court shall hold a hearing on at least 25 days' notice to *the debtor, creditors, equity security holders and other parties in interest* as provided in Rule 2002.... The plan and the disclosure statement shall be mailed with the notice of the hearing only to the debtor, any trustee or committee appointed under the Code, the Securities and Exchange Commission and any party in interest who requests in writing a copy of the statement or plan.

FED.R.BANKR.P. 3017(a) (emphasis added). When F.R.B.P.2002 states that notice is to be given to "parties-in-interest," its text refers to "the debtor, the trustee, all creditors and indenture trustees." FED. R.BANKR.P. 2002. Furthermore, F.R.B.P. 3017(d) provides that upon the court's approval of the disclosure statement, the plan, disclosure statement and notice of the time to file a ballot must be mailed to "all creditors and equity security holders, and in a chapter 11 reorganization case ... to the United States trustee." FED. R.BANKR.P. 3017(d). Lastly, F.R.B.P. 2002(b) provides for at least 25 days notice of the confirmation hearing to be served upon "the debtor, the trustee, all creditors and indenture trustees." FED.R.BANKR.P. 2002(b). The Bankruptcy Code and Rules are clear on who is to be served with the plan and disclosure statement, and Liberty does not fall into any of the categories of recipients.

The cases relied upon by Liberty include *Harstad v. First American Bank,* 39 F.3d 898 (8th Cir.1994), *Paramount Plastics, Inc. v. Polymerland, Inc. (In re Paramount Plastics, Inc.),* 172 B.R. 331 (Bankr.W.D.Wash.1994), *Pardue v. Potter,* 632 So.2d 470 (Ala.1994), and *Berryman Products, Inc. v. Nationwide Mutual Ins. Co. (In re Berryman Products, Inc.),* 183 B.R. 463 (N.D.Tex.1995). Analysis of those cases reveal that the courts there focused on whether due process was satisfied. The facts in those cases support

**608**

their conclusions. However, the facts before this Court do not call for that determination. Those courts for the most part were concerned with whether the *creditor body* received sufficient notice of the adversary proceedings that were to be prosecuted post-confirmation.

*Harstad* and *Paramount* refer to notice being given to *creditors*, not defendants in the adversary proceedings involved there. In *Harstad,* the debtor filed a preference action three months after its plan was confirmed. 39 F.3d at 901. There, the disclosure statement reported that the debtor and creditor's committee had not completed an analysis of possible pre-petition transfers that may constitute avoidable actions. *Id.* The *Harstad* court focused on the fact that the creditors in its case did not receive any notice of the debtor's intention to bring this proceeding. *Id.* at 903. Viewing § 1123(b)(3) as partially a notice provision, the court stated that:

> Creditors have the right to know of any potential causes of action that might enlarge the estate—and that could be used to increase payment to the creditors. Even if, as the Harstads claim, they gave notice of such claims by indicating in their disclosure statement that the availability of such claims was being investigated, the creditors are entitled to know if the debtors intend to pursue the preferences in post-confirmation actions.

*Id.* Liberty argues that the *Harstad* court affirmatively rejects the Debtor's argument that the language contained in Goodman's Disclosure Statement did give notice to the creditors of this action. However, the debtor's disclosure statement in *Harstad* merely stated that the debtor had not completed analysis of possible preference actions, whereas Goodman's Disclosure Statement specifies that, "The Debtor reserved the right to pursue an avoidance claim against Liberty Mutual under the stipulation of settlement. Any such action will be filed prior to confirmation and the Debtor anticipates that Liberty Mutual would rigorously defend same." (Debtor's Second Amended Disclosure Statement,

dated October 7, 1999, at 40.) Goodman's creditors received straightforward notice that the Debtor may file this action, and in fact even foretold the timing by stating that it would be filed prior to confirmation. Contrary to Liberty's insistence, the spirit of the *Harstad* court's holding, that creditors must receive clear notice that the Debtor intends to bring a particular action, appears to be in accord with a decision which would allow Goodman to continue to prosecute this action.

*Paramount* is similar to *Harstad* in that the preference action was filed post-confirmation and there was no reference at all to potential preference or avoidance actions in the plan or disclosure statement. 172 B.R. at 332. The *Paramount* court stressed a need for "specific and unequivocal" language retaining the right to bring the action in order for a creditor to have enough information in order to cast an informed vote. *Id.* at 334. Since the debtor's plan contained no reference to preference actions, and this Court assumes there was no mention in the disclosure statement as the decision does not refer to it at all, the *Paramount* court concluded that the debtor failed to retain its right to pursue the action and therefore lacked standing. *Id.* at 335. However, as Goodman argues, the debtor in *Paramount,* unlike Goodman, filed its action post-confirmation and failed to give its creditors any notice of its intent to pursue an action, thereby depriving them of that knowledge prior to their casting of votes. As in *Harstad,* the *Paramount* court explains that § 1123(b)(3) is really intended to give creditors notice of a possible action that the Debtor may pursue in order for a creditor to adjust its vote accordingly. *Id.* at 334. Disclosing the action in the Disclosure Statement accomplished such notice in the present case, specifying that if the Debtor was to file an action, it would do so prior to confirmation, and the Debtor actually did file the action prior to confirmation which gave its creditors notice that it was pursuing this action.

In *Pardue,* an Alabama state court refused to allow a plaintiff to pursue a state court action which it had filed prior to confirmation of its plan of reorganization in bankruptcy court, but which the plaintiff had not mentioned in its plan or disclosure statement. 632 So.2d at 473. The court dismissed the action holding that the plaintiff had "waived his right to proceed in the pending state action by not providing in his bankruptcy 'Plan' for the retention and enforcement of the cause of action in the present case." *Id.* However, this again differs from the instant case because of the fact that Goodman did disclose its intent to pursue this action by including it clearly in the disclosure statement. The plaintiff in *Pardue* did not.

The Seventh Circuit in *P.A. Bergner & Co. v. Bank One (In re P.A. Bergner & Co.),* 140 F.3d 1111 (7th Cir.1998) dealt with a situation that more closely resembles the facts in the instant case than the cases cited by Liberty. In *Bergner,* the Debtor filed an avoidance action pre-confirmation to recover payments made to Bank One pre-petition. 140 F.3d at 1117. A substantial amount of discovery had already been done at the time of the confirmation of the Plan. *Id.* The plan stated:

> Effective as of the date of the approval of the Disclosure Statement by the Bankruptcy Court, the Debtors waive the right to prosecute and release any avoidance or recovery actions under sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Court or any other causes of action, or rights to payments of claims, that belong to the Debtors or the Debtors in Possession, *other than any such actions that may be pending on such date.*

*Id.* (emphasis added). The court's examination of the text of § 1123(b)(3) lead it to the conclusion that the statute does not contain a requirement that the language of a plan be "specific and unequivocal." *Id.* Instead, the court in *Bergner* emphasized that even courts that have required "specific and unequivocal" language merely require that a plan retain claims of a particular type, rather than listing the specific claims retained. *Id.* The Seventh Circuit stressed that the language contained in that debtor's plan gave the creditor, Bank One, all the notice it was entitled to under § 1123(b)(3) in order for the debtor to preserve the action. *Id.* The present case is similar to *Bergner* in that the Debtor filed the action pre-confirmation and the Debtor's creditors were given notice of the possibility that the Debtor would pursue this action because of the specific reference to it in the Disclosure Statement. However, in *Bergner,* the notice of the type of action that the debtor was retaining appeared in the plan, not the disclosure statement. The issue faced by this Court therefore becomes whether a reference to an action in the disclosure statement has the same effect as it has being referred to in the plan.

Goodman relies on *J.E. Jennings, Inc. v. William Carter Co. (In re J.E. Jennings, Inc.),* 46 B.R. 167 (Bankr.E.D.Pa.1985) which bears similarity to the instant case in that the adversary proceeding at issue was filed pre-confirmation. *Id.* at 169. Its reliance on *Jennings* arises out of the court there having found that the debtor had standing, although it did not use that specific term, to pursue the action post-confirmation by virtue of language contained in the order confirming the plan. *Id.* at 170. That order essentially stated that the bankruptcy court was retaining jurisdiction over "any right of the Debtors to recover assets pursuant to the provisions of the Code." *Id.* The *Harstad* court and the *Paramount* court declined to follow *Jennings,* and Liberty argues that this court should not follow it either. *Harstad,* 39 F.3d at 902–03; *Paramount,* 172 B.R. at 334–35. The problem is that the *Jennings* court makes no specific reference to § 1123, and the case law it cites is predominately based upon Bankruptcy Act cases. This Court acknowledges that *Jennings* is somewhat lacking in its legal analysis and therefore declines to rely upon it as far as it having any basis in this court's present decision.

If the policy behind § 1123(b)(3), which deals with contents of a plan, is to give notice to the creditors as to what actions the debtor may pursue post-confirmation, then it would seem that notice of the action in the disclosure statement should be sufficient since the creditors are required to have a copy of the disclosure statement served on them before or at the same time as they receive a copy of the plan. 11 U.S.C. § 1125(b). As was noted earlier in this decision, F.R.B.P.2002(b) requires that the hearing to consider the adequacy of a disclosure statement is required to be given to "the debtor, the trustee, all creditors and indenture trustees" and not to a party who may be the subject of an action as provided for in § 1123(b)(3). But, on the other hand, the text of § 1123 specifically refers to what may be included in a plan, not in a plan *and* disclosure statement. Additionally, § 1125, which deals with postpetition disclosure and solicitation, discusses the requirements of a disclosure statement, essentially showing that a disclosure statement and plan are two distinct and separate documents.

In *Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G. (In re Galerie Des Monnaies of Geneva, Ltd.)*, 55 B.R. 253, 259 (Bankr.S.D.N.Y.1985), the court decided that a debtor could not pursue a preference action post-confirmation because of a failure to disclose the action in its disclosure statement. The court ruled on the basis of judicial estoppel, rather than discussing the standing of the debtor to pursue the action. *Id.* at 260. In coming to its conclusion that the statement in the debtor's disclosure statement, in pertinent part, that "[t]he Debtor's management did not believe any preferences or fraudulent transfers have occurred," was contrary to the actions it took on the day the plan was confirmed in filing a preference action, the court discussed the importance of a disclosure statement. *Id.* at 259. The court characterized a disclosure statement as "a most important step" in reorganizations, and stressed the importance that it must include facts informing its creditors of "the financial results of

acceptance or rejection of a plan." *Id.* On appeal to the District Court, again the importance of a disclosure statement was stressed. *Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G. (In re Galerie Des Monnaies of Geneva, Ltd.)*, 62 B.R. 224, 226 (S.D.N.Y.1986). The District Court described a disclosure statement as "critical" for creditors in determining their vote. *Id.* In addition, the court acknowledged that creditors consider avoidance actions and the possible recovery from such actions in casting their vote. *Id.* That court, just as in *Harstad*, stressed the importance of notice to the creditor body of a debtor's intention to bring a particular action, regardless of whether it was given in a disclosure statement or plan, thereby allowing the creditors the opportunity to reject the plan or object to its implementation. *Id.; See also Mickey's Enterprises, Inc. v. Saturday Sales, Inc. (In re Mickey's Enterprises, Inc.)*, 165 B.R. 188, 194 (Bankr.W.D.Tex.1994) (court ruled that res judicata barred claim based upon the lack of information concerning a preference action in the debtor's disclosure statement).

In contrast, the court in *Trapp v. R–Vec Corp.*, 359 N.W.2d 323 (Minn.Ct.App.1984), gives little weight to a disclosure statement. *Id.* at 328. That decision by the highest state court in Minnesota voided a judgment based upon the fact that part of the underlying claim had been settled and the debtor's plan of reorganization did not provide for survival of the balance of the claim beyond the settlement amount. *Id.* That court made the statement that, "The disclosure statement, however, is only intended to provide information to creditors. See 11 U.S.C. § 1125 (1978). It does not have the legal effect of an order confirming a plan for reorganization." *Id.* Unfortunately, the *Trapp* court does not cite any case law for that proposition, and its cite to § 1125 is not helpful. Actually, the Code does not directly state that the disclosure statement is only for informational purposes and has no legal effect. The Bankruptcy Code requires a disclosure state-

ment and § 1125 stresses the importance of the information contained therein. Inasmuch as the cases cited by Liberty, in particular, *Harstad, Paramount* and *Pardue,* all dealt with fact patterns where the debtors failed to make any specific disclosure of their intentions to bring the actions in issue in their disclosure statements, those cases are not dispositive regarding the effect of notice in a disclosure statement.

*Berryman* has no bearing on the standing issue before this Court because the facts differ significantly from the instant case. 183 B.R. at 463. In *Berryman,* a creditor moved the bankruptcy court for an order allowing it to pursue an avoidance action against one of the debtor's principals post-confirmation. *Id.* at 466. The court held that the avoidance action was vested in the debtor pursuant to the plan and the bankruptcy court did not have the power to give the creditor the right to pursue the action inasmuch as it would constitute a modification of the plan without the consent of the creditor body. *Id.* at 467.

However, *Berryman* is helpful regarding the jurisdiction of a bankruptcy court post-confirmation. The Debtor in the present case has pointed to language in its Plan, which purports to retain the jurisdiction of the bankruptcy court over several matters, claiming this language effectively retains standing also. The relevant text of the Debtor's Plan reads:

## ARTICLE X

### RETENTION OF JURISDICTION

10.1. Until entry of a final order closing the bankruptcy case, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 case and all matters arising thereunder to insure the purpose and intent of the Plan is carried out and for the following additional purposes: (i) to consider any modification of the Plan under § 1127 of the Code; (ii) to hear and determine all controversies, suits and disputes that may arise in connection with the interpretation or enforce-

ment of the Plan; (iii) to determine all matters which may be pending on the Confirmation Date; (iv) to hear and determine all requests and applications for compensation and/or reimbursement of expenses which may be filed by professionals within thirty (30) days of the Confirmation Date; (v) to consider and act on the compromise and settlement of any claims against or causes of action on behalf of the Debtor's estate; (vi) to consider and act on such other matters as may be consistent with the Plan and aid in its implementation; and (vii) to issue such order as may be necessary or appropriate for the consummation of the Plan.

(Debtor's Second Amended Plan of Reorganization, dated October 7, 1999, at 19.) The *Berryman* court, citing the bankruptcy court's decision in *Harstad,* succinctly states that the parties themselves cannot expand or contract a bankruptcy court's jurisdiction. *Berryman,* 183 B.R. at 467 (citing *Harstad,* 155 B.R. at 507). Interestingly, on appeal, the Eighth Circuit in *Harstad* included a footnote regarding the jurisdictional clause in the plan, which notes:

We hasten to add that Article X [the provision of the plan purporting to retain jurisdiction] cannot and does not *confer* jurisdiction upon the court, as only Congress may do that. We view it instead as merely setting forth the understanding of the Harstads, the court, and the creditors as to what actions would be brought in the bankruptcy court post-confirmation.

*Harstad,* 39 F.3d at 902 n. 7. This court interprets that footnote as acknowledging that this type of jurisdictional clause does provide some amount of notice to the creditors. In *Harstad,* the jurisdictional language merely stated that the debtors could exercise any rights to recover assets pursuant to the Code. *Id.* Such a broad statement certainly does not provide notice to the debtor's creditors of exactly what actions that may constitute. In contrast, the

language in the instant case is much more specific, inasmuch as it asks the court, "to determine all matters which may be pending on the Confirmation Date." (Debtor's Second Amended Plan of Reorganization, dated October 7, 1999, at 19.) Here, creditors need only look at the docket sheet for the case to see what matters have not been concluded at the time of confirmation to know what the Debtor intends to pursue. That certainly satisfies the notice policy that *Harstad* itself requires pursuant to § 1123(b), which was discussed earlier in this opinion.

Also as discussed earlier, the debtor in *Paramount Plastics, Inc.* started an action post-confirmation, and did not specifically reference its intention to do so in its plan or disclosure statement. 172 B.R. at 332. The retention of jurisdiction clause in the debtor's plan provided for the court to determine the allowance of claims and "all matters related to the Reorganization Plan until substantial consummation." *Id.* The creditors clearly had no notice of the potential action at the time votes for the plan were collected. As with *Harstad*, the facts of *Paramount*, notably the lack of notice to the creditors, sufficiently distinguish it from the present case. Thus while this Court's ruling is different from the conclusions found in those two cases, they are helpful in reinforcing the policy behind § 1123 regarding notice to the creditors of the potential action and the intention of the debtor to pursue it.

■ As has already been noted, in the instant case Goodman specifically gave notice of its intention to file an adversary proceeding against Liberty in its Disclosure Statement. In addition, Goodman also provided in the Disclosure Statement that if it did indeed decide to file this

action, it would do so prior to confirmation. Goodman then proceeded to file just such an action more than a month prior to the signing of an order confirming the plan. Its creditors clearly were on notice of its intention to pursue this action prior to their casting of votes. Furthermore, the Plan also provided for the court to continue to have jurisdiction to decide pending matters. As this Court previously discussed, neither the parties nor the court has the power to enlarge or limit the court's jurisdiction since it is granted its jurisdiction by statute. *See* 28 U.S.C. §§ 157 & 1334. However, that provision does give further notice to the creditors that this Debtor would seek a resolution of this pending matter. Based upon the notice provided to creditors, this Court finds that the policy behind § 1123(b)(3)(B) has been fulfilled and as such, the Debtor has standing to continue to pursue this adversary proceeding.[3]

### 3. Res Judicata

■ Liberty argues that if the right to bring an avoidance action is not clearly set forth in a confirmed plan, the doctrine of res judicata bars any further steps in pursuing that action post-confirmation. However, *Mickey's Enterprises*, one of the cases cited by Liberty in support of its res judicata argument, found that in a case where there was not adequate pre-confirmation disclosure of a potential cause of action, res judicata barred the pursuit of the claim post-confirmation. 165 B.R. at 194. In the instant case, this court has found that there was adequate notice of the action in question, therefore *Mickey's Enterprises* certainly does not require res judicata to be applied here. In addition, *Bonwit Teller, Inc. v. Jewelmasters, Inc.*

---

**3.** Both the *Harstad* and *Paramount* courts address the issue of benefit to the estate because, in both instances, the courts had before them motions for summary judgment. *Harstad*, 39 F.3d at 903; *Paramount*, 172 B.R. at 333. Although the parties in the present action provided some discussion on that point, the only issue before this Court deals with a motion for a judgment on the pleadings, and

as was discussed earlier in this decision, has not been deemed a motion for summary judgment.

In addition, analysis of whether or not the Debtor's Plan may be modified at this time, also discussed in both parties' motion papers, is irrelevant at this juncture because this Court does not have a motion seeking to modify the Debtor's plan before it.

*(In re Hooker Investments, Inc.)*, 162 B.R. 426, 434 (Bankr.S.D.N.Y.1993) held that where there is an express reservation of a right to an action, res judicata will not be a bar to a debtor's right to institute an avoidance action subsequent to a confirmation order.

In *Berryman*, another case relied upon by Liberty to support its res judicata argument, the plan provided for the debtor, the appellant in the case, to retain the right to bring an avoidance action. 183 B.R. at 467. The appellee, the liability insurer of the debtor's co-defendant in a state court action, had filed a motion asking the bankruptcy court to allow it to bring an avoidance action on behalf of the debtor. *Id.* at 466. The plan specified that the debtor, not the insurance carrier, retained the right to bring avoidance actions post-confirmation. Therefore the District Court, on hearing the appeal of the bankruptcy court's order allowing the insurance carrier to file an action, found that the order confirming the plan had a res judicata effect, forestalling the bankruptcy court, or any court, from deciding that any entity other than the debtor had the right to bring this action. *Id.* at 467.

 The *Berryman* court went on to make the statement that the bankruptcy court's order was inappropriate because "it authorized appellee to bring the avoidance action on behalf of the debtor, an entity that no longer existed." *Id.* That statement does not prevent the present debtor from continuing this action on the basis, as Liberty claims, it no longer exists. Section 1123(b)(3)(B) expressly allows "the retention and enforcement by *the debtor* ... of any such claim or interest." 11 U.S.C. § 1123(b)(3)(B) (emphasis added). The statute clearly anticipates a "debtor" pursuing a claim post-confirmation, even if courts have stated that the debtor entity ceases to exist post-confirmation. *See Berryman*, 183 B.R. at 467; *In re Roy Gooden Plumbing and Sewer Co., Inc.*, 156 B.R. 635, 637 (Bankr.E.D.Mo.1993). A clear reading of § 1123(b)(3)(B) demonstrates that the successor entity to the debtor is deemed to be the entity that retains the right, post-confirmation, to pursue a claim. Any res judicata effect of the confirmation of this Plan in the instant case does not bar the entity that was essentially the debtor pre-confirmation from pursuing this avoidance action against Liberty.

**CONCLUSION**

1. This Court has jurisdiction over the instant matter pursuant to 28 U.S.C. §§ 157 & 1334 and the Standing Order of Referral of Cases to Bankruptcy Judges for the Eastern District of New York, dated August 28, 1986. Defendant's motion is a core matter within 28 U.S.C. § 157(b)(2)(F).

2. Defendant's motion for judgment on the pleadings is denied.

3. Defendant is directed to settle an order in conformity with this decision.