# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 12, 2008

Charles R. Fulbruge III
Clerk

No. 07-51074

———————

IN THE MATTER OF:  UNITED OPERATING, LLC

                                                         Debtor

————————————

DYNASTY OIL AND GAS, LLC

                                                       Appellant

v.

CITIZENS BANK; CHARLES SPRADLIN; WILDCAT ENERGY, LLC;
ROGER L. BECKER

                                                       Appellees

———————

Appeal from the United States District Court
for the Western District of Texas

———————

Before JONES, Chief Judge and WIENER and CLEMENT, Circuit Judges.

EDITH H. JONES, Chief Judge:

      Dynasty Oil and Gas ("Dynasty") survived as a shell corporation after all of its assets were liquidated in a Chapter 11 bankruptcy.  The bankruptcy court granted summary judgment against Dynasty's post-confirmation attempt to sue the Appellees for their alleged mismanagement of its property during the reorganization.  We affirm the judgment for the following reasons.

BACKGROUND

In early 2004, Dynasty filed a Chapter 11 bankruptcy case. At the time of filing Dynasty owned several oil and gas properties, which had been out of production since late 2003. Citizens Bank ("Citizens"), Dynasty's largest single creditor, moved the court to appoint an operator to bring Dynasty's properties back into production. On Citizens' motion, the court appointed Wildcat Energy, LLC ("Wildcat") and Wildcat's manager and principal, Roger Becker, to operate Dynasty's oil and gas wells. Citizens was authorized to pay Wildcat's fees and expenses out of the debtor-in-possession account. Wildcat was responsible for operations for approximately seven months, from April 2004 until the confirmation of the Chapter 11 plan ("Plan") in November 2004.

The Plan authorized another creditor, Saber Resources, LLC ("Saber"), to purchase all of Dynasty's assets in exchange for a lump-sum payment to Citizens in the amount of $2.5 million. Other unsecured creditors received cents on the dollar, and Dynasty's equity holders were allocated nothing, because the estate lacked sufficient funds to pay all claims in full. Though Dynasty had been a debtor-in-possession, the Plan specified that Dynasty would not be revested with title to any estate assets at confirmation, because Saber was purchasing substantially all of Dynasty's assets. The Plan nonetheless provided that Dynasty and the Official Unsecured Creditors' Committee ("Committee") retained limited powers to pursue some claims on behalf of the estate.

After the Plan was confirmed, in February 2005, the Creditors' Committee filed suit against Citizens and Wildcat (the "First Action"). The First Action complaint alleged various claims under state law and the Bankruptcy Code (the "Code"). Among other things, the Committee claimed that Wildcat completed unnecessary work on various wells, and that Citizens wrongfully paid for this work, needlessly depleting the balance of the debtor-in-possession account. The court dismissed the Committee's state-law claims under Rule 12(b)(6).

Thereafter, Wildcat was dismissed from the suit, and the remaining claims arising under the Code were settled.

In March 2006, Dynasty filed the present action in Texas state court (the "Second Action"), naming as defendants Citizens and Wildcat, as well as Roger Becker, Wildcat's principal, and Charles Spradlin, a loan officer with Citizens. The Second Action petition states common-law claims against the Appellees for, inter alia, failing to complete necessary work on some wells, completing unnecessary work on other wells, and misrepresentation. Appellees removed the Second Action, with no objection from Dynasty, to the district court, and the district court referred the matter to the bankruptcy court. The bankruptcy court, concluding that Dynasty's claims in the Second Action were barred by the resolution of the First Action, granted summary judgment to the Appellees on the basis of res judicata and collateral estoppel. The district court affirmed the bankruptcy court's decision on both grounds, and Dynasty appeals.

## DISCUSSION

It is unnecessary for us to reach the questions of res judicata or collateral estoppel, because this case turns on the more fundamental question of Dynasty's standing. Standing is a jurisdictional requirement, and we are obliged to ensure it is satisfied regardless whether the parties address the matter. Lang v. French, 154 F.3d 217, 222 n.28 (5th Cir. 1998). Here, the question is whether Dynasty, a reorganized debtor, has standing to pursue claims based on the Appellees' pre-confirmation management of the estate's assets. We conclude it does not.[1]

During its Chapter 11 case, Dynasty, as a debtor-in-possession, had most of the powers of a bankruptcy trustee to pursue claims on behalf of the estate.

---

[1] Because federal courts lack jurisdiction on the basis of Dynasty's lack of standing, we need not consider whether the bankruptcy court has subject matter jurisdiction over a state-law controversy, albeit one related to the estate's administration.

11 U.S.C. § 1107(a). Upon confirmation of the plan, the estate ceased to exist, and Dynasty lost its status as a debtor "in possession." 11 U.S.C. § 1101(1); In re Grinstead, 75 B.R. 2, 3 (Bankr. D. Minn. 1985). At that time, Dynasty's authority to pursue claims as though it were a trustee also expired. In re Ice Cream Liquidation, Inc., 319 B.R. 324, 333 (Bankr. D. Conn. 2005) (debtor-in-possession status, along with the relevant powers of a trustee, "ceases on the effective date of a confirmed plan").

Nonetheless, in some cases the Code allows a reorganized debtor to bring a post-confirmation action on a "claim or interest belonging to the debtor or to the estate." 11 U.S.C. § 1123(b)(3). A debtor may preserve its standing to bring such a claim (e.g., for fraud or breach of fiduciary duty,[2] or to avoid a preferential transfer[3]) but only if the plan of reorganization expressly provides for the claim's "retention and enforcement by the debtor." § 1123(b)(3)(B). "After confirmation of a plan, the ability of the [debtor] to enforce a claim once held by the estate is limited to that which has been retained in the plan." In re Paramount Plastics, Inc., 172 B.R. 331, 333 (Bankr. W.D. Wash. 1994); see also In re Tex. Gen. Petrol. Corp., 52 F.3d 1330, 1335 n.4 (5th Cir. 1995) (citing Harstad, 39 F.3d at 902-03).

For a debtor to preserve a claim, "the plan must expressly retain the right to pursue such actions." Paramount, 172 B.R. at 333. The reservation must be "specific and unequivocal." Harstad, 39 F.3d at 902; see also Ice Cream, 319 B.R. at 337-38 (holding that the plan's categorical reservation of "preference" claims was sufficiently specific; plan need not itemize individual transfers that may be pursued as preferential). If a debtor has not made an effective reservation, the debtor has no standing to pursue a claim that the estate owned before it was dissolved. This is a logical consequence of the nature of a bankruptcy, which is

---

[2] In re Avado Brands, Inc., 358 B.R. 868, 883 (Bankr. N.D. Tex. 2006).

[3] Harstad v. First American Bank, 39 F.3d 898, 901-02 (8th Cir. 1994)

designed primarily to "secure prompt, effective administration and settlement of all debtor's assets and liabilities within a limited time." In re Kroh Bros. Dev. Co., 100 B.R. 487, 495 (Bankr. W.D. Mo. 1989) (internal citation omitted). To facilitate this timely, comprehensive resolution of an estate, a debtor must put its creditors on notice of any claim it wishes to pursue after confirmation. Harstad, 39 F.3d at 903 ("We view § 1123(b)(3) as, at least in part, a notice provision."). Proper notice allows creditors to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it — "absent 'specific and unequivocal' retention language in the plan, creditors lack sufficient information regarding their benefits and potential liabilities to cast an intelligent vote." Paramount, 172 B.R. at 334.

Here Dynasty alleges, in short, that if the Appellees had discharged their duties properly, Dynasty's wells would have been more productive at a lower cost, leaving more money in the debtor-in-possession account and commanding a higher purchase price from Saber. Dynasty did not preserve its right to pursue these claims post-confirmation. Neither the Plan's blanket reservation of "any and all claims" arising under the Code, nor its specific reservation of other types of claims under various Code provisions are sufficient to preserve the common-law claims Dynasty now brings for, inter alia, fraud, breach of fiduciary duty, and negligence. See Paramount, 172 B.R. at 335 (no standing to pursue preference action where preference actions were not preserved in the plan); Ice Cream, 319 B.R. at 333 (no standing to pursue turnover actions because the plan "made no mention" of them). Nor can the bankruptcy court's retention of jurisdiction over a given type of claim preserve a debtor's standing to pursue it. Harstad, 39 F.3d at 902.

If Dynasty had wanted to bring a post-confirmation action for mal-administration of the estate's property during the bankruptcy, it was required to state as much clearly in the Plan. Had that been the case, the creditors could

have reviewed the possible impact of future litigation on their claims and liabilities before voting to confirm the Plan. As it happened, Dynasty did not preserve those claims.[4] The Plan has been confirmed and substantially consummated; the estate no longer exists. Dynasty is without standing to assert these claims.

Dynasty also lacks standing to pursue its misrepresentation claim. Dynasty complains that Citizens agreed its claim against Dynasty would be satisfied by Saber's $2.5 million payment, yet the bank brought a subsequent collection action against Dynasty's guarantors. Dynasty, a discharged debtor, has no standing to represent its guarantors, and has shown no injury of its own. Dynasty has no liability on Citizens' claim, nor is it potentially liable to its guarantors for reimbursement of any payment they make to Citizens. During the bankruptcy, Dynasty's guarantors held a contingent claim against the estate, which would have become fixed if and when they paid Citizens on the guarantee. In re Boles, 150 B.R. 733, 736 (Bankr. W.D. Mo. 1993); Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chi., 877 F.2d 1333, 1336 (7th Cir. 1989) ("Guarantors are contingent creditors. If the firm stiffs a creditor, that creditor can collect from the guarantor; the guarantor succeeds to the original creditor's claim against the firm.") Dynasty's liability to Citizens, including its contingent liability to its guarantors on the same debt, was discharged in the bankruptcy. Dynasty has no standing to raise this claim.

The bankruptcy court's judgment in favor of the Appellees, affirmed by the district court, is therefore AFFIRMED.

---

[4] In fact, Dynasty sat by while the Creditors' Committee pursued very similar, perhaps identical, claims against the Appellees post-confirmation. This situation led to the bankruptcy court's adjudication of claim and issue preclusion.