# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 07-3671

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| 8,800 Pounds, more or less, of | * | District Court for the |
| Powdered Egg White Product, | * | Eastern District of Missouri. |
| | * | |
| Defendant, | * | |
| | * | |
| Creative Compounds, LLC, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  June 13, 2008
Filed:  December 24, 2008

_____

Before LOKEN, Chief Judge, COLLOTON, Circuit Judge, and PIERSOL,* District
Judge.

_____

LOKEN, Chief Judge.

Creative Compounds, LLC, illegally imported 8800 pounds of powdered egg whites intended for human consumption from Peru. After the product mistakenly

_____

*The HONORABLE LAWRENCE L. PIERSOL, United States District Judge for the District of South Dakota, sitting by designation.

cleared U.S. Customs, it was detained by the U.S. Department of Agriculture at a warehouse in Missouri. When Creative could not obtain a certificate from the Peruvian government that would permit use of the product as animal feed, the United States commenced this action seeking condemnation and destruction of the powdered egg whites under 21 U.S.C. § 1049. The district court[1] granted the government's motion for summary judgment. Creative appeals, arguing it should be allowed to export the shipment back to Peru. We affirm.

## I.

The importation of egg products is regulated under two statutes enforced by distinct divisions of the U.S. Department of Agriculture. The Animal and Plant Health Inspection Service (APHIS) enforces the Animal Health Protection Act (AHPA). Enacted in 2002, this statute protects domestic animals by authorizing USDA to prohibit or restrict the importation of any article "to prevent the introduction into or dissemination within the United States of any pest or disease of livestock." 7 U.S.C. § 8303(a)(1). USDA regulations bar the importation of egg products from countries such as Peru unless the products are accompanied by an APHIS permit establishing that the eggs "have been cooked or processed or will be handled in a manner that will prevent the introduction of [Exotic Newcastle Disease] into the United States." 9 C.F.R. § 94.6(c)(4).

While the AHPA regulates the importation of egg products that might harm domestic animals, the Egg Products Inspection Act (EPIA), administered by the Food Safety and Inspection Service (FSIS), provides for comprehensive inspection and labeling of egg products "capable of use as human food" in this country. 21 U.S.C. §§ 1034-36. To complement the inspection and labeling of domestic products, the

---

[1]The HONORABLE RODNEY W. SIPPEL, United States District Judge for the Eastern District of Missouri.

EPIA further provides that no egg products capable of use as human food may be imported unless they were processed under "an approved continuous inspection system of the government of the foreign country of origin . . . and otherwise comply with the standards of this chapter." 21 U.S.C. § 1046(a)(2). At present, USDA has approved only Canada and the Netherlands as countries that maintain a continuous inspection system equivalent to that in the United States. See 9 C.F.R. § 590.910(b). Thus, egg products for human consumption may not be imported from Peru. Once an imported egg product has entered the United States, it is deemed a domestic article subject to the EPIA, 21 U.S.C. § 1046(a)(4), which means that it may be transported and sold only if it was processed under a continuous inspection system, § 1037(b)(2). USDA may seek seizure and condemnation of egg products that violate the EPIA. 21 U.S.C. § 1049.

## II.

Creative is a supplier of raw ingredients for nutritional products. In 2003, a client was interested in purchasing powdered egg whites, a protein ingredient whose price was rising in the United States. Creative learned that the product might be purchased in Peru and obtained an import permit application from an APHIS website. On July 31, 2003, Creative submitted an application describing the product to be imported as "Egg white powder (albumin) for human consumption." Before receiving a permit, Creative purchased 8800 pounds of powdered egg whites from a Peruvian supplier. The product was shipped from Peru to New York and transported under bond to Chicago, where it awaited clearance by U.S. Customs.

On October 16, APHIS e-mailed an import permit to Creative's chief executive officer, Gary Haynes, who forwarded it to an import broker with instructions that the broker seek release of the product from Customs. Because Haynes did not read the permit, he failed to note two conditions:

Each shipment must be accompanied by an ORIGINAL certificate endorsed by a . . . veterinarian . . . of the GOVERNMENT OF PERU certifying that the egg whites in the imported product [were] pasteurized at 56° C for 10 minutes.

Importer is responsible for obtaining any required authorization from the USDA, Food Safety and Inspection Service (FSIS). FSIS has specific public health requirements concerning egg products apart from USDA's animal health requirements.

The shipment from Peru was not accompanied by the required Peruvian government certificate, and Creative did not seek authorization from FSIS.

Customs cleared the powdered egg whites on October 23, and Creative transported the product to its warehouse in Chaffee, Missouri, for use in nutritional supplements. On December 5, acting on a complaint, FSIS detained the egg whites because they were imported in violation of the EPIA. On December 23, FSIS released the egg whites to APHIS, which issued an Emergency Action Notification restricting their entry into commerce unless Creative obtained the required pasteurization certificate from the Peruvian government. When Creative failed to obtain that certificate, FSIS again detained the shipment and commenced this action for seizure and destruction of the product under 21 U.S.C. § 1049. USDA refused Creative's request for an export certificate permitting shipment of the powdered egg whites to Peru even though Creative's Peruvian supplier had agreed to repurchase the product. "As the powdered egg white product is not an inspected product," FSIS explained, it "cannot be exported from the United States."

**III.**

The district court granted the government's motion for summary judgment, concluding (i) the powdered egg whites are capable of use for human consumption and therefore were imported in violation of the EPIA because Peru lacks the required

-4-

inspection system, see 21 U.S.C. § 1046(a)(2); 9 C.F.R. § 590.910; (ii) when the shipment cleared Customs and was transported to Creative's storage facility in Missouri, it became a domestic article subject to the EPIA, 9 C.F.R. § 590.900(b); (iii) as a domestic article that was not properly inspected, the powdered egg whites may not be transported or sold, 21 U.S.C. § 1037(b)(2); and therefore (iv) the powdered egg whites "shall be liable to be proceeded against and seized and condemned," 21 U.S.C. § 1049. We review the grant of summary judgment *de novo*. United States v. 3234 Washington Ave. N., 480 F.3d 841, 842 (8th Cir. 2007).

Creative argues that the EPIA statute and regulations permit the powdered egg whites to be exported. The statute provides that, when eggs capable of use as human food are improperly imported, the Secretary "may prescribe the terms and conditions for the destruction of all such articles . . . unless (1) they are exported by the consignee within the time fixed therefor by the Secretary . . . ." 21 U.S.C. § 1046(b). Similarly, the regulations provide that, when egg products for human consumption have been designated as "U.S. Refused Entry," they shall be destroyed "[u]nless such products are exported by the consignee within a time specified by the collector of customs." 9 C.F.R § 590.945(a). Therefore, Creative argues, because it was willing to export the detained product to Peru, and its Peruvian supplier was willing to repurchase the shipment, the district court erred in granting summary judgment condemning the product for destruction.

We agree with the district court that 21 U.S.C. § 1046(b)(1) and 9 C.F.R § 590.945(a) apply only when an imported egg product lacking proper inspection is refused entry before clearing U.S. Customs. At that point, the product may be exported within the time fixed by USDA and Customs. However, the statute treats an imported egg product that has cleared Customs and entered domestic commerce the same as a product produced in this country without the inspection and labeling required by the EPIA. Such a product may not be transported or sold "in commerce" unless it has been inspected, labeled, and packaged in accordance with the EPIA. 21

U.S.C. § 1037(b)(2). Thus, § 1046(b)(1) and 9 C.F.R. § 590.945(a) provide Creative no relief from condemnation and destruction under § 1049.

Creative further argues that it is unjust to order the destruction of powdered egg whites that were "lawfully imported pursuant to a Permit issued by the USDA," that were cleared by Customs, and for which there is a market elsewhere in the world. Creative does not provide a legal theory supporting this argument. It appears to be an assertion that USDA was guilty of arbitrary and capricious agency action. See 5 U.S.C. § 706(2)(A).

The stated premise for this argument is that USDA misled Creative by referring its initial inquiry to an APHIS website, and that APHIS erred by issuing an import permit when Creative's application stated that an egg product was being imported from Peru "for human consumption," which was clearly prohibited by the EPIA regulations, see 9 C.F.R. § 590.910(b). The first part of the premise is unproved. There is evidence in the record on appeal that Creative had not previously imported egg products. But there is nothing describing Creative's initial inquiry to USDA or identifying the USDA official who allegedly referred Creative to the APHIS website.

APHIS administers a statute that permits importation of egg products from Peru if they are accompanied by a government certificate establishing that the product was pasteurized to prevent the introduction of Exotic Newcastle Disease into the United States. 9 C.F.R. § 94.6(c)(4). APHIS can be criticized for issuing an import permit in response to Creative's application for an importation prohibited by the EPIA, a statute enforced by another regulatory arm of USDA. But the permit clearly warned that FSIS must be consulted, and that APHIS required a Peruvian government certificate Creative had not obtained and, as it turned out, could not obtain. Instead of reading the permit and seeking to comply with its conditions, Creative sent the permit to an import broker with instructions to have the shipment released by U.S. Customs. Unfortunately, Customs officials in Chicago improperly released the

illegally imported shipment into commerce.  At that point, the product became no different than a product manufactured in this country without the inspection and labeling required by the EPIA.  FSIS prohibits the export of such products.

In these circumstances, the record reveals a sequence of errors and oversights supporting the district court's conclusion that "most if not all of the fault for the powdered egg whites' illegal importation into this country lies with Creative Compounds and its import broker."  Even if the EPIA statute and regulations could be read as granting FSIS discretion in this highly unusual situation to ignore the fact that an illegally manufactured human food product had entered domestic commerce, and to permit its export to Peru, the agency was not guilty of arbitrary and capricious action in strictly enforcing the EPIA.  Therefore, when Creative could not obtain a Peruvian government certificate that would permit the product to be used in this country as animal feed, USDA lawfully sought its condemnation and destruction.

The judgment of the district court is affirmed.

_____