# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 21, 2011

No. 10-10717

Lyle W. Cayce
Clerk

In the Matter of:  TEXAS WYOMING DRILLING, INC.,

Debtor

------------------------------

JOHN DEE SPICER, Chapter 7 Trustee for Texas Wyoming Drilling, Inc.,

Appellee,

v.

LAGUNA MADRE OIL & GAS II, L.L.C.; PALOMA VENTURES; RONALD KNECHT; STEPHEN L. DANCHOK; GARTH STANGER, Trustee of the Stanger Family Trust; WILLIAM E. WALTHERS; DONALD ANDERSON, Trustee of the Anderson Living Trust; TRUSTEE OF THE DALE AND CAROLYN HANST TRUST; ERIC KIERSH; MICHAEL HUMPHREY, Trustee of the Humphrey Family Trust; WADE VESSEY; KAREN VESSEY; KEITH HANST; LEO HANLY; DANNY JACKSON; GARY GRACE; WILLIAM BRINKOP; DAN PETERS,

Appellants.

Appeal from the United States Bankruptcy Court
for the Northern District of Texas

No. 10-10717

Before DAVIS, CLEMENT, and ELROD, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Laguna Madre Oil & Gas II, L.L.C., et al., ("Laguna"), appeals the bankruptcy court's denial of its motion for summary judgment. We AFFIRM.

## FACTS AND PROCEEDINGS

Texas Wyoming Drilling, Inc. ("TWD") filed a voluntary petition for bankruptcy under Chapter 11.  Thereafter, TWD filed its disclosure statement and plan, both of which were approved by the bankruptcy court.  Among other things, the plan eliminated all of TWD's shareholders' stock interests in TWD.

Central to this dispute are the terms of the plan and the disclosure statement; namely, whether the terms preserved TWD's claims against Laguna. Under the section entitled "Retention of Causes of Action," the plan provides that "[t]he Reorganized Debtor shall retain all rights, claims, defenses, and causes of action including, but not limited to, the Estate Actions, and shall have sole authority to prosecute and/or settle such actions."  (R. 122).  "Estate Actions" is defined to include claims under Chapter 5 of the Bankruptcy Code.[1] (R. 126-27).  The disclosure statement also states that "[t]he Debtor reserves all rights to pursue, at its sole discretion, any Estate Actions not limited to but including any preference to the full extent allowed under the Bankruptcy Code and applicable state laws.  The Debtor may also pursue other actions including but not limited to actions under sections 542 and 549 of the Bankruptcy Code." (R. 113). The disclosure statement again defines "Estate Actions" to include "various potential avoidable transfers that can be recovered under Chapter 5."

---

[1] Avoidance actions arise under Chapter 5 of the Bankruptcy Code, specifically 11 U.S.C. §§ 544-51.

No. 10-10717

(R. 113). Included within the disclosure statement was a chart outlining "various claims and causes of action the Debtor or the Reorganized Debtor may pursue on behalf of the Debtor's estate." (R. 114-15). As one of the potential defendants, the chart listed "Various pre-petition shareholders of the Debtor" who might be sued for "fraudulent transfer and recovery of dividends paid to shareholders," valuing the claims at approximately $4 million. (R. 115).

A few months after confirmation of the plan, TWD sued thirty-two of its former shareholders, including the appellants here, for pre-petition dividend payments that were allegedly fraudulent transfers under 11 U.S.C. §§ 544, 548, and 550, and the Texas Business and Commerce Code, alleging that the former shareholders had received dividends and other transfers equaling millions of dollars while TWD was insolvent ("Avoidance Actions"). (R. 24-29).

Laguna filed a motion for summary judgment, arguing that TWD had no standing because TWD's plan did not adequately retain the Avoidance Actions under 11 U.S.C. § 1123. In the alternative, Laguna argued that TWD's claims were barred by res judicata and judicial estoppel. The day before the hearing on Laguna's motion, the bankruptcy court *sua sponte* converted TWD's Chapter 11 bankruptcy to a Chapter 7 bankruptcy because TWD had materially defaulted under the plan. The trustee automatically succeeded TWD as the plaintiff in the Avoidance Actions proceedings against Laguna. The bankruptcy court then denied Laguna's motion, holding that the defenses were meritless, but that, even if any of them had merit, the court's conversion of the case meant that the Chapter 7 trustee could pursue the claims even though the post-confirmation Chapter 11 debtor could not. At Laguna's request, the bankruptcy court certified the order for direct appeal, *see* 28 U.S.C. § 158(d)(2), and this

No. 10-10717

court granted Laguna's petition for permission to appeal.

## STANDARD OF REVIEW

A grant of summary judgment is reviewed *de novo. Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We review questions of jurisdiction, including standing, *de novo. Bonds v. Tandy*, 457 F.3d 409, 411 (5th Cir. 2006). If the district court expressly or implicitly resolved any factual disputes in making its jurisdictional ruling, we review such findings for clear error. *See Pederson v. La. State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000). "[B]ecause 'judicial estoppel is an equitable doctrine, and the decision whether to invoke it [is] within the court's discretion, we review for abuse of discretion' the lower court's decision to invoke it." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384 (5th Cir. 2008) (citation omitted). "The res judicata effect of a prior judgment is a question of law that we review *de novo.*" *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004).

## DISCUSSION

### I. *Standing*

"[A]fter confirmation of a plan, the ability of the debtor to enforce a claim once held by the estate is limited to that which has been retained in the [bankruptcy] plan." *Dynasty Oil & Gas, L.L.C. v. Citizens Bank (In re United Operating, L.L.C.)*, 540 F.3d 351, 355 (5th Cir. 2008); *see also* 11 U.S.C. § 1123(b)(3) ("[A] plan may . . . provide for . . . the retention and enforcement [of any claim] by the debtor."). "For a debtor to preserve a claim, the plan must expressly retain the right to pursue such actions. The reservation must be

4

specific and unequivocal." *In re United Operating*, 540 F.3d at 355  (citations and internal quotation marks omitted); *see also Nat'l Benevolent Ass'n of the Christian Church v. Weil, Gotshal & Manges, LLP (In re Nat'l Benevolent Ass'n of the Christian Church)*, 333 F. App'x 822, 826 (5th Cir. 2009). "If a debtor has not made an effective reservation, the debtor has no standing to pursue a claim that the estate owned before it was dissolved. This is a logical consequence of the nature of a bankruptcy, which is designed primarily to secure prompt, effective administration and settlement of all debtor's assets and liabilities within a limited time."  *In re United Operating*, 540 F.3d at 355 (internal quotation marks omitted).  The purpose of the rule is to put "creditors on notice of any claim [the debtor] wishes to pursue after confirmation" and enable "creditors to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it." *Id*. "[A]bsent specific and unequivocal retention language in the plan, creditors lack sufficient information regarding their benefits and potential liabilities to cast an intelligent vote." *Id*. (internal quotation marks omitted).

a. Disclosure Statement

We first address Laguna's argument that this court may not consider the disclosure statement alongside the plan to determine whether the trustee has standing. Although no court of appeals has addressed whether the disclosure statement may be consulted for purposes of standing, courts routinely consult the disclosure statement in deciding whether res judicata and judicial estoppel apply. *See, e.g.*, *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 208 (5th Cir. 1999) (explaining that claims must be revealed in plan and disclosure statement or trustee may be judicially estopped from pursuing them);

*Browning v. Levy*, 283 F.3d 761, 774 (6th Cir. 2002) (considering whether the disclosure statement properly preserved claims or whether res judicata and judicial estoppel should be applied); *In re Kelley*, 199 B.R. 698, 704 (B.A.P. 9th Cir. 1996) (holding that "if the debtor fails to mention the cause of action in either his schedules, disclosure statement, or plan, then he will be precluded from asserting it postconfirmation"). In addition, several lower courts have held that, with respect to standing, "[c]ourts are to consider the disclosure statement as well as the terms of a plan of reorganization." *Floyd v. CIBC World Mkts., Inc.*, 426 B.R. 622, 637-38 (S.D. Tex. 2009). By contrast, at least one other court has held that language in the disclosure statement cannot satisfy the statutory requirement in 11 U.S.C. § 1123(b)(3)(B) that the "retention and [right of] enforcement" of claims "be set forth in the [p]lan." *See Ice Cream Liquidation, Inc. v. Calip Dairies, Inc. (In re Ice Cream Liquidation)*, 319 B.R. 324, 333 n.14 (Bankr. D. Conn. 2005). But § 1123(b)(3)(B) does not explicitly or implicitly address whether claims may also be preserved in the disclosure statement.

We observe that the disclosure statement is the primary notice mechanism informing a creditor's vote for or against a plan. *See* 11 U.S.C. § 1125. Considering the disclosure statement to determine whether a post-confirmation debtor has standing is consistent with the purpose of *In re United Operating*'s requirement: placing creditors on notice of the claims the post-confirmation debtor intends to pursue. *See* 540 F.3d at 355. In light of the role served by the disclosure statement, the purpose behind the rule in *In re United Operating*, and the fact that, in similar contexts, courts routinely consider the disclosure statement to determine whether a claim is preserved, we hold that courts may consult the disclosure statement in addition to the plan to determine whether

No. 10-10717

a post-confirmation debtor has standing.

b. Language in Plan and Disclosure Statement

Laguna asserts that under this court's precedent in *In re United Operating*, TWD failed to retain the Avoidance Actions in the plan and the trustee lacks standing to pursue these claims. After confirmation of the plan, the *In re United Operating* debtor sought to bring common-law claims against its creditors, including maladministration causes of action. *Id.* at 356. The plan contained only a blanket reservation of "any and all claims" arising under the Bankruptcy Code, as well as specific reservations of other types of claims also arising under the Code. *Id.* There was no mention of any common-law claims. We held that "[i]f [the debtor] had wanted to bring a post-confirmation action for maladministration of the estate's property during the bankruptcy, it was required to state as much clearly in the [p]lan" and that the use of generic language reserving "any and all claims" under the Code was insufficient to retain a claim for maladministration of the estate. *Id.* Unlike the plan in *In re United Operating*, which contained only a blanket reservation of "any and all claims," TWD's plan and disclosure statement revealed the existence of the Avoidance Actions, the possible amount of recovery to which they would lead, the basis for the actions (namely, pre-petition dividends and transfers to equity interest holders), and that the reorganized debtor intended to pursue the claims. The terms of TWD's plan and disclosure statement are far more specific than those in *In re United Operating*.

Additionally, Laguna contends that because the plan and disclosure statement did not name the individual defendants, the debtor failed to retain the Avoidance Actions under *In re United Operating*. We observe that *In re*

7

No. 10-10717

*United Operating* focused exclusively on the retention of *claims*. It never held that intended defendants must be named in the plan. But it did cite with approval *In re Ice Cream Liquidation*, for the proposition that "the plan's categorical reservation of 'preference' claims was sufficiently specific; plan need not itemize individual transfers that may be pursued as preferential." *In re United Operating,* 540 F.3d at 355 (citing *In re Ice Cream Liquidation*, 319 B.R. at 337-38). *In re Ice Cream Liquidation* held that while creditors must be told in the plan that avoidance actions will be pursued post-confirmation, individual prospective defendants did not have to be identified.  319 B.R. at 337-38.

In re United Operating's citation to *In re Ice Cream Liquidation*'s holding supports the trustee's argument that a plan need not identify the prospective defendants.  However, we need not decide whether a debtor whose plan fails to identify *any* prospective defendants has standing to pursue post-conformation claims against subsequently-named defendants. Here, the disclosure statement *did* identify the prospective defendants as "[v]arious pre-petition shareholders of the Debtor" who might be sued for "fraudulent transfer and recovery of dividends paid to shareholders." We hold that where the plan and disclosure statement reserved  the right to pursue the Avoidance Actions against pre-petition shareholders of TWD, the reorganized debtor specifically and unequivocally retained these claims under *In re United Operating*. The trustee therefore has standing to pursue the Avoidance Actions,[2] and the

---

[2] Laguna also argues that because the plan explicitly released one former shareholder from all liability, it was required to name the individual defendants against whom it would bring suit. Notwithstanding the plan's release of one former shareholder, because the plan and disclosure statement sufficiently reserved the right to bring the Avoidance Actions, the trustee has standing to pursue them.

No. 10-10717

district court properly denied summary judgment on this ground.[3]

II.     *Judicial Estoppel*

The defendants argue that the trustee is judicially estopped from pursuing the Avoidance Actions because TWD failed to disclose the actions on its schedules. This circuit has outlined three requirements for judicial estoppel: (1) clearly inconsistent positions; (2) the court's acceptance of the previous position; and (3) absence of inadvertence. *Superior Crewboats, Inc. v. Primary P&I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 335 (5th Cir. 2004). The purpose of judicial estoppel is "to protect the integrity of the judicial process" by preventing parties from "playing fast and loose" with the courts. *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988) (internal quotation marks omitted).  It is generally invoked where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *In re Superior Crewboats, Inc.*, 374 F.3d at 334-35.

The defendant's argument founders on the first requirement because TWD did not take clearly inconsistent positions. As explained above, TWD's plan and disclosure statement retained the right to pursue the Avoidance Actions. Because TWD explicitly retained the same claims against the defendants that the trustee is now pursuing, there is no inconsistency in its position. The district court's holding that the trustee was not judicially estopped from pursuing the Avoidance Actions was not an abuse of discretion.

---

[3]Because we hold that the plan and disclosure statement sufficiently preserved the Avoidance Actions, we need not address the Shareholder's appeal of the bankruptcy court's alternative finding that the conversion of the TWD's Chapter 11 bankruptcy into a Chapter 7 bankruptcy conferred standing upon the newly-appointed trustee of the estate.

III. *Res Judicata*

The defendants also argue that the Avoidance Actions are barred by res judicata based on the bankruptcy court's order confirming the plan. For res judicata to apply: (1) the parties must be identical in both suits; (2) a court of competent jurisdiction must have rendered the prior judgment; (3) there must have been a final judgment on the merits in the previous decision; and (4) the plaintiff must raise the same cause of action or claim in both suits. *Howe v. Vaughan (In re Howe)*, 913 F.2d 1138, 1143-44 (5th Cir. 1990). In bankruptcy cases, the confirmation order is the first judgment. *Eubanks v. Fed. Deposit Ins. Corp.*, 977 F.2d 166, 170 (5th Cir. 1992).

Res judicata does not apply here. The defendants have not pointed to a prior final judgment on the merits of the Avoidance Actions. "A judgment that expressly leaves open the opportunity to bring a second action on specified parts of the claim or cause of action that was advanced in the first action should be effective to forestall preclusion." *Vines v. Univ. of La. at Monroe*, 398 F.3d 700, 712 (5th Cir. 2005). "Res judicata does not apply where a claim is expressly reserved by the litigant in the earlier bankruptcy proceeding." *Browning*, 283 F.3d at 774; *Ries v. Paige (In re Paige)*, 610 F.3d 865, 875 (5th Cir. 2010) (holding that a trustee's claim was barred by res judicata and stating that the trustee "could have asked the bankruptcy court to reserve his fraud claims for later adjudication," which would have avoided his claims being barred). The confirmation order here provided that TWD retained the right to "demand, enforce, and litigate Estate Actions [which include the Avoidance Actions]." As the bankruptcy court held, "where, as here, an intent to pursue a claim post-confirmation has been manifested in both the confirmed plan and

No. 10-10717

its associated disclosure statement, the res judicata effect of confirmation would not . . . preclude pursuit of those claims." *Spicer v. Laguna Madre Oil & Gas II, L.L.C. (In re Texas Wyoming Drilling, Inc.*), 422 B.R. 612, 636 (Bankr. N.D. Tex. 2010). The confirmation order specifically left open the opportunity for TWD to bring the claims in a second action, and the claims should not be precluded. Because the confirmation order preserved the Avoidance Actions, they are not barred by res judicata.

## CONCLUSION

The bankruptcy court properly denied Laguna's motion for summary judgment because the plan adequately preserved the Avoidance Actions and the claims were not barred by judicial estoppel or res judicata.  We AFFIRM.

11