# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 14, 2012

No. 11-20478

Lyle W. Cayce
Clerk

In the Matter of:  MPF HOLDINGS US LLC; MPF CORP., LTD.; MPF-01, LTD.,

Debtors

------------------------------

JEFF COMPTON, Litigation Trustee of the MPF Litigation Trust,

Appellant

v.

BRIAN ANDERSON; CHEN DONGUY; CLH INVEST AS; CS TOTAL LIMITED, now known as Coens Energy Company, Limited; DALIAN AUSTRALIA INTERNATIONAL TRADE COMPANY, LIMITED; ERNEST & YOUNG AS; FIRST COMMISSION SERVICE S.A.; FJORD TECHNOLOGY AS; GRENLAND GROUP TECHNOLOGY AS; INOCEAN AS; IRONSHIELD CAPITAL MANAGEMENT, L.L.P.; JANUS TRADING COMPANY; KEPPEL SHIPYARD LIMITED; MORTEN HENRIK KIELLAND; GL NOBLE DENTON; OCEANIA AS; PARISCO AS; PROJECT PARTNERS GREATER CHINA LIMITED; TRETT CONTRACT SERVICES, LIMITED; VIA TRAVEL; MUSTANG ENGINEERING, LIMITED; MUSTANG ENGINEERING, L.P.,

Appellees

Appeals from the United States Bankruptcy Court
for the Southern District of Texas

Before STEWART, Chief Judge, and DeMOSS and GRAVES, Circuit Judges.

No. 11-20478

DeMOSS, Circuit Judge:

## I.

This is a direct appeal from the Bankruptcy Court for the Southern District of Texas. MPF Corp. Ltd., MPF-01 Ltd., and MPF Holding US LLC (collectively the "Debtors") filed for Chapter 11 bankruptcy in September of 2008. Prior to bankruptcy, the Debtors had been in the business of constructing a massive mobile offshore drilling vessel known as a multi purpose floater ("MPF unit"). Cost overruns forced the Debtors to cease work on the MPF unit and seek bankruptcy protection.

In bankruptcy, the Debtors' assets consisted primarily of construction and supply contracts relating to the MPF unit ("Vendor Contracts") as well as equipment delivered pursuant to those contracts. The Debtors' largest vendor was Cosco Dalian Shipyard Co. Ltd. ("Cosco"), which had contracted to build the hull of the MPF unit. After nearly two years of unsuccessful attempts to locate a buyer for the MPF project, the Debtors' main secured lender brokered a transaction whereby the Debtors sold the Vendor Contracts and some of the delivered equipment to Cosco, which then took over construction of the MPF unit. Pursuant to the transaction, Cosco, the Debtors, and the vendors entered into novation agreements that substituted Cosco for the Debtors in the Vendor Contracts.

Under a reorganization plan approved by the bankruptcy court (the "Reorganization Plan" or "Plan"), Cosco paid a lump sum toward the balance on the secured and debtor-in-possession loans as consideration for the Vendor Contracts and equipment. Vendors with secured claims were given the option of either reclaiming their collateral or participating in the Cosco transaction. Unsecured creditors were to receive disbursements from a litigation trust that would pursue, among other claims, avoidance actions.

2

No. 11-20478

Section 4.03 of the Reorganization Plan described the claims the Debtors reserved to the Litigation Trustee, providing in relevant part that "all Causes of Action, including but not limited to, (i) any Avoidance Action that may exist against any party identified on Exhibits 3(b) and (c) of the Debtors' statements of financial affairs . . . shall be transferred to the Litigation Trustee."  The Plan defined "Avoidance Actions" as "any and all actual or potential claims or Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including §§ 542, 543, 544, 545, 547, 548, 549, 550, 551, 553, and 742(a)."  Section 4.03 specifically excluded "any Cause of Action released in connection with or under the Plan or by prior order of the Court" from the scope of reserved claims.

Shortly after the bankruptcy court approved the Plan, the Litigation Trustee began initiating avoidance actions, including a number of actions against vendors that had participated in the Cosco transaction.  It is undisputed that each of the defendants against whom the Litigation Trustee initiated avoidance actions was listed on Exhibits 3(b) and 3(c) of the Debtors' statement of financial affairs.  Several of the vendors sued by the Litigation Trustee joined in a motion to "enforc[e] the terms of the confirmation order" and dismiss the avoidance actions, primarily on the grounds that (1) the Debtors had released the vendors from all claims as part of the Cosco transaction and (2) preference recovery on the Vendor Contracts was barred because the Debtors had assumed the Vendor Contracts in bankruptcy prior to assigning the contracts to Cosco.[1]

At a hearing on the vendors' motion, the bankruptcy court *sua sponte* raised the issue of whether the Plan's reservation of avoidance actions was

---

[1] The basis for this second argument is a line of cases following *In re Superior Toy & Mfg. Co.*, 78 F.3d 1169 (7th Cir. 1996).  In general terms, these cases hold that when a debtor assumes an executory contract in bankruptcy, the debtor may not later pursue an avoidance claim for preferential payments on the contract.  Resolving this appeal does not require us to decide whether to adopt the *Superior Toy* doctrine.  We therefore decline to address that issue.

3

No. 11-20478

sufficient under *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351, 355 (5th Cir. 2008), which held that unless a debtor makes a "specific and unequivocal" reservation of a cause of action, the debtor will lack standing to bring the claim post-reorganization. After supplemental briefing, the bankruptcy court found that the reservation language in the Plan did not meet the "unequivocal" requirement of *United Operating* and was therefore ineffective to reserve any causes of action to the Litigation Trustee. *See In re MPF Holding U.S. LLC*, 443 B.R. 736, 748-55 (Bankr. S.D. Tex. 2011) (order on motion to dismiss). In its written order, the bankruptcy court first held that in order to meet the specific and unequivocal standard, a debtor must (1) individually identify the parties to be sued post-confirmation, (2) state that each party will be sued, rather than that it may be sued, and (3) set forth the legal basis for the suit. *Id.* at 744-75. The bankruptcy court then found that the that the Plan was insufficiently unequivocal because it reserved avoidance actions that "may exist" against the parties identified on Exhibits 3(b) and 3(c), rather than avoidance actions that "do exist and will be prosecuted." *Id.* at 749-750. The bankruptcy court also held that because the Plan provided that released causes of action were not being reserved and appeared to release at least some of the defendants sued by the Litigation Trustee, the reservation language was ambiguous and therefore equivocal. *Id.* at 750-755.

As a result of its ruling, the bankruptcy court dismissed for lack of standing every adversary action initiated by the Litigation Trustee. The bankruptcy court certified its order for direct appeal to this court pursuant to 28 U.S.C. § 158(d)(2)(A)(ii)-(iii).[2] *In re MPF Holding U.S. LLC*, 44 B.R. 719 (Bankr.

---

[2] The motion to dismiss giving rise to the instant appeal was made in the main bankruptcy case. The Litigation Trustee appealed the bankruptcy court's ruling on that motion as well as each of the bankruptcy's court's orders dismissing each individual adversary proceeding. The bankruptcy court held the appeals from the individual cases in abeyance pending the outcome of the appeal of the order in the main case, except for the appeals from

No. 11-20478

S.D. Tex. 2011) (order certifying appeal). We have jurisdiction pursuant to 28 U.S.C. § 158(d)(2).

## II.

This court reviews questions of standing de novo. *Spicer v. Laguna Madre Oil & Gas II, L.L.C. (In re Tex. Wyo. Drilling, Inc.)*, 647 F.3d 547, 550 (5th Cir. 2011). If the bankruptcy court "expressly or implicitly resolved any factual disputes" in resolving a standing question, the court reviews such findings for clear error. *Id.* "Mixed questions of fact and law, and questions concerning the application of law to the facts, are reviewed *de novo*." *Bass v. Denny (In re Bass)*, 171 F.3d 1016, 1021 (5th Cir. 1999).

## III.

"The filing of a bankruptcy petition creates an estate that is comprised of, among other things, 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 584 (5th Cir. 2008) (quoting 11 U.S.C. § 541(a)(1)). "[R]ights of action such as claims based on state or federal law," are among the legal and equitable interests of the debtor that become part of the bankruptcy estate. *Id.* (internal quotations omitted). In a Chapter 11 bankruptcy where the debtor assumes debtor-in-possession status, the debtor obtains most of the powers of a bankruptcy trustee, including the power to pursue claims belonging to the estate. *United Operating*, 540 F.3d at 355 (citing 22 U.S.C. § 1107(a)).

---

the adversary actions against Aker Pusnes AS ("Aker"), InOcean As ("InOcean"), KCA Deutag Drilling Ltd. ("KCA"), Mustang Engineering Ltd. ("Mustang"), Worldwide Oilfield Machine, Inc. ("Worldwide"), and Keppel Shipyard Limited ("Keppel"). With the exception of Keppel, each of those entities were vendors that participated in the Cosco transaction and joined in the original motion to dismiss. Aker, Worldwide, and KCA settled with the Litigation Trustee and have been dismissed from this appeal. Accordingly, the orders on appeal before us are the bankruptcy court's ruling in the main case and its orders dismissing the adversary proceedings against InOcean, Mustang, and Keppel.

No. 11-20478

In general, when a Chapter 11 reorganization plan is confirmed by the bankruptcy court, the debtor losses its debtor-in-possession status and with it, standing to pursue the estate's claims. *Id.* Section 1123(b)(3) of the Bankruptcy Code, however, allows a debtor to retain causes of action possessed by the bankruptcy estate by providing for the retention of such claims in its reorganization plan. *See* 11 U.S.C. § 1123(b)(3). One of the options available to a debtor under § 1123(b)(3) is to reserve some or all of its claims to a trustee (often called a "liquidating trustee" or a "litigation trustee") who then pursues the claims for the benefit of creditors. *See Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 387 (5th Cir. 2009) ("Section 1123 therefore allows a plan to transfer to a trustee of a liquidating trust the authority to enforce an estate's claims . . . and to distribute the proceeds of successful suits."); *McFarland v. Leyh (In re Tex. Gen. Petroleum Corp.)*, 52 F.3d 1330, 1335 (5th Cir. 1995) (holding that § 1123(b)(3) "allows a plan to transfer avoidance powers" to a liquidating trust that will "pursue avoidance actions on behalf of unsecured creditors"). After the reorganization plan is confirmed by the bankruptcy court, the debtor (or its representative) will have standing to bring claims that the debtor reserved in the reorganization plan but will not have standing to bring claims that were not reserved in the plan. *United Operating*, 540 F.3d at 355; *see also Tex. Gen. Petroleum Corp.*, 52 F.3d at 1335 n.4 ("For a debtor to assert an avoidance action postconfirmation, the plan must give the debtor standing to assert the action and the debtor must assert it for the benefit of the estate. Thus, a debtor cannot assert an avoidance action postconfirmation if the plan does not provide him with the requisite authority to do so." (internal citation omitted)).

In *Dynasty Oil and Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351, 355 (5th Cir. 2008), the court held that a reorganization plan must contain a "specific and unequivocal" reservation in order for the

debtor to have standing to pursue a claim post-bankruptcy. The debtor in that case brought common-law claims against the court-appointed operator of the debtor's oil and gas properties and the lender that had sought appointment of the operator. 540 F.3d at 354. The reorganization plan specifically reserved claims arising under various sections of the Bankruptcy Code. *Id.* at 356. It also contained a general reservation of "any and all claims" arising under the Bankruptcy Code. *Id.* The plan said nothing, however, about the kinds of common-law claims the debtor asserted against the operator and secured lender. *Id.* For that reason, the court held that the debtor failed to make a specific and unequivocal reservation of those claims and that it therefore lacked standing to pursue them. *Id.*

The Fifth Circuit applied the specific and unequivocal standard in *Spicer v. Laguna Madre Oil & Gas II, L.L.C. (In re Tex. Wyo. Drilling, Inc.)*, 647 F.3d 547 (5th Cir. 2011), which was decided after the bankruptcy court issued the order on appeal here. In *Texas Wyoming*, a litigation trustee filed over thirty avoidance actions against the debtor's former shareholders, seeking to recover dividends paid to the shareholders while the debtor was insolvent. 647 F.3d at 549. The disclosure statement[3] stated that the debtor reserved the right to pursue "any preference to the full extent allowed under the Bankruptcy Code" and expressly referenced Chapter 5 of the Code, which relates to avoidance actions. *Id.* at 549. The disclosure statement further provided that among the "various claims and causes of action the Debtor or the Reorganized Debtor may pursue on behalf of the Debtor's estate" are claims against "[v]arious pre-petition shareholders of the Debtor [for] fraudulent transfer and recovery of dividends

---

[3] The disclosure statement is a statutorily required document that must be approved by the bankruptcy court and distributed to creditors prior to approval of a reorganization plan. *See* 11 U.S.C. § 1125(b). In *Texas Wyoming*, the Fifth Circuit also held that "courts may consult the disclosure statement in addition to the plan to determine whether a post-confirmation debtor has standing." 647 F.3d at 550.

paid to shareholders." *Id.* Neither the disclosure statement nor the reorganization plan identified any individual pre-petition shareholders that the debtor planned to sue or any specific transfers the debtor would seek to avoid. *Id.* at 549, 551.

The defendant argued that the debtor's reservation of avoidance actions failed the specific and unequivocal test because it did not identify individual defendants. *Id.* at 551-52. The court rejected that argument, stating: "We observe that *In re United Operating* focused exclusively on the retention of *claims*. It never held that intended defendants must be named in the plan." *Id.* at 552. At the same time, however, the court did not decide the issue of "whether a debtor whose plan fails to identify *any* prospective defendants has standing to pursue post-confirmation claims against subsequently-named defendants" because the disclosure statement at issue in *Texas Wyoming* "*did* identify the prospective defendants as '[v]arious pre-petition shareholders of the Debtor' who might be sued for 'fraudulent transfer and recovery of dividends paid to shareholders.'" *Id.*

## IV.

The bankruptcy court, working without the benefit of the recent *Texas Wyoming* decision, read *United Operating* as holding that (1) "the parties to be sued after confirmation must be individually identified ," (2) the reorganization plan must state that the individually named defendants "*will be sued*–not that they *may be sued* or *could be sued* or *might be sued*," and (3) "the reservation must set forth the legal basis for the suit." *MPF Holding*, 443 B.R. at 744-75. In *Texas Wyoming*, the court specifically rejected the first requirement identified by the bankruptcy court. *See* 647 F.3d at 552 (noting that *United Operating* "never held that intended defendants must be named in the plan."). Additionally, *Texas Wyoming* held that a reorganization plan that merely identified the parties who "might be sued" and gave the debtor "sole discretion"

on whether to bring any of the reserved claims was sufficient under *United Operating*. *Id.* at 549, 552. *Texas Wyoming* therefore made clear that the second requirement identified by the bankruptcy court is not mandated by *United Operating*. Accordingly, the bankruptcy court erred in holding that the Debtors' reservation of avoidance actions in this case failed because it reserved claims that "may exist." *See also Torch Liquidating Trust*, 561 F.3d at 381 n.1 (finding standing under § 1123(b)(3) where reorganization plan reserved "any and all Causes of Action Debtors *may have*" (emphasis added)).[4]

The bankruptcy court also held that the Reorganization Plan did not make a sufficiently unequivocal reservation because the Plan excluded released claims from the scope of the reservation and also appeared to release at least some of the defendants sued by the Litigation Trustee. In support of its holding, the bankruptcy court relied primarily on *National Benevolent Association of the Christian Church (Disciples of Christ) v. Weil, Gotshal & Mangers, LLP (In re National Benevolent Association of the Christian Church (Disciples of Christ))*, 333 F. App'x 822 (5th Cir. 2009), an unpublished case decided shortly after *United Operating*. The bankruptcy court read *National Benevolent Association* as holding that if a reorganization plan is ambiguous as to which claims have been reserved, then the plan *per se* fails to make a specific and unequivocal reservation. *MPF Holding*, 443 B.R. at 749-51. It then found that the Plan's apparent release of some defendants combined with the exclusion of released causes of action from the scope of the reservation clause created an ambiguity that rendered the reservation language equivocal. *Id.* at 750-755.

---

[4] The third requirement identified by the bankruptcy court—that the reorganization plan set forth the legal basis for the reserved claims—was the core holding of *United Operating*. That requirement, however, does not appear to have been part of the bankruptcy court's holding that the Debtors' reservation was insufficiently unequivocal.

No. 11-20478

In *National Benevolent Association*, the reorganized debtor sued the law firm that represented it before and during bankruptcy for malpractice based on the firm's pre-bankruptcy conduct. *Id.* at 825. The law firm argued that the reorganization plan only reserved causes of action relating to its representation of the debtor during the bankruptcy while the debtor argued that the plan reserved causes of action relating to the law firm's legal work both before and during the bankruptcy. *Id.* at 827-28. The Fifth Circuit did not decide which party's reading of the reorganization plan was the preferred one. Instead, the court "merely conclude[d] that the plan's provisions d[id] not specifically and unequivocally reserve to [the debtor] the right to prosecute its claim against [the law firm] arising out of the alleged attorney misconduct that occurred prior to the . . . bankruptcy petition filing and proceedings." *Id.* at 828-29.

While it is true that the court in *National Benevolent Association* acknowledged that the language in the reorganization plan may have been susceptible to more than one reading, it is not clear the court based its holding on a rule that any ambiguity in the reservation language always fails the specific and unequivocal test. Additionally, in *Texas General Petroleum Corp.*—a case cited with approval by *United Operating*—the Fifth Circuit found § 1123(b)(3) standing where the reservation language truly was ambiguous. 52 F.3d at 1336. In that case, the reservation clause stated that "[a]mong the property of the estate hereby distributed to the [liquidating] trust are those claims and causes of action listed or described on Exhibit B (including causes of action created or sanctioned by §§ 542-553)." *Id.* The claim initiated by the liquidating trustee fell within the scope of "causes of action created or sanctioned by §§ 542-553," but was not listed or detailed on Exhibit B. *Id.* at 1335. The bankruptcy court found that the plan was ambiguous as to whether the debtor was reserving only those §§ 542-553 claims that were also listed on Exhibit B or whether §§ 542-553 causes of action were being reserved in addition to the claims on Exhibit B. *Id.*

at 1336.  Using parol evidence, the bankruptcy court ultimately found that the §§ 542-553 claims not appearing on Exhibit B had nonetheless been reserved to the liquidating trust.  *Id.*  The Fifth Circuit agreed with the bankruptcy court's determination that the plan was ambiguous and agreed with its resolution of the ambiguity.  *Id.*  It therefore affirmed the bankruptcy court's holding that the liquidating trustee had standing to pursue the avoidance action.  *Id.*  The holding in *Texas General Petroleum Corp.* is in clear tension with a general rule that any ambiguity in the reservation language of a reorganization plan renders the reservation invalid. This provides an additional reason to refrain from reading *National Benevolent Association* as announcing such a rule.

Moreover, even if this court were to adopt the bankruptcy court's reading of *National Benevolent Association*, it does not appear that the reservation language at issue here is actually ambiguous.  There is no question that the Reorganization Plan excluded released causes of action from the scope of reserved claims.  That there is some disagreement as to which parties were released (or as to how or whether the *Superior Toy* doctrine applies) does not create an ambiguity as to whether the Debtors retained the right to pursue to released causes of action; they unambiguously did not.  Further, the bankruptcy court's finding that the reservation language was ambiguous appears to have been based solely on the conclusion that—irrespective of whether the Plan could reasonably be interpreted as not releasing the avoidance action defendants—it "at least appear[ed] to release the Defendants." *See In re MPF Holding*, 443 B.R. at 752.   Under general rules of contract interpretation, a writing is not ambiguous unless it is reasonably susceptible to more than one meaning.  *See Dean v. City of Shreveport*, 438 F.3d 448, 460-61 (5th Cir. 2006).  Further, courts regularly apply principles of contract interpretation to clarify the meaning of the language in reorganization plans.  *See Advisory Comm. Of Major Funding Corp. v. Sommers (In re Advisory Comm. of Major Funding Corp.)*, 109 F.3d 219, 222

(5th Cir. 1997); *Tex. Gen. Petroleum Corp.*, 52 F.3d at 1335. It follows that a finding that one party's interpretation of the Plan is reasonable cannot alone support a finding that the Plan is ambiguous. If a court applies contract interpretation principles and finds that the only reasonable interpretation of the Plan is that certain parties were released, that would not render the reservation insufficiently specific and unequivocal. Instead, it would mean that claims against those parties fall outside the scope of the reservation. Thus, irrespective of whether an ambiguity *per se* renders a reservation equivocal, the bankruptcy court erred in its finding that the reservation language was ambiguous.

## V.

In sum, the reasons relied upon by the bankruptcy court for finding that the Reorganization Plan did not contain a sufficiently unequivocal reservation are not supported by our case law. Rather, as in *Texas Wyoming*, the terms of the Reorganization Plan here "are far more specific than those in *In re United Operating*." 647 F.3d at 551. Indeed, the Reorganization Plan in this case provided more specificity than the plan at issue in *Texas Wyoming*. In addition to stating the basis of recovery, the Exhibits referenced in the Reorganization Plan identified each defendant by name. Accordingly, we hold that the reservation language in the Reorganization Plan was sufficiently specific and unequivocal under *United Operating*.

We cannot, however, find that the Litigation Trustee has standing to sue each of the Appellees here. The reservation clause of the Reorganization Plan specifically carves out released claims. Accordingly, the Litigation Trustee lacks standing to bring, and the bankruptcy court is without jurisdiction to hear, any such claims. Although several of the Appellees argued that they were released in connection with the Cosco transaction from the claims brought by the Litigation Trustee, the bankruptcy court expressly declined to rule on those arguments. We therefore VACATE the bankruptcy court's order and REMAND

No. 11-20478

for further consideration of the Litigation Trustee's standing consistent with this opinion. In doing so, we note that while a court should determine whether it has subject matter jurisdiction at the earliest possible stage in the proceedings, some jurisdictional discovery may be warranted if the issue of subject matter jurisdiction turns on a disputed fact. *Eckstein Marine Serv., L.L.C. v. Jackson (In re Eckstein Marine Serv. L.L.C.)*, 672 F.3d 310, 319-320 (5th Cir. 2012).

VACATED AND REMANDED