# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 18, 2013

No. 11-51106

Lyle W. Cayce
Clerk

In the Matter of:  SI RESTRUCTURING INCORPORATED,

Debtor

---

JOHN C. WOOLEY; JEFFREY J. WOOLEY,

Appellants

v.

HAYNES & BOONE, L.L.P.; SAM COATS; PIKE POWERS; JOHN SHARP; SARAH WEDDINGTON; GARY M. CADENHEAD,

Appellees

Appeal from the United States District Court
for the Western District of Texas

Before WIENER, CLEMENT, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

John C. Wooley and Jeffrey J. Wooley appeal the denial of their motion to pursue post-confirmation causes of action on behalf of a reorganized debtor. Because the Wooleys lack standing to pursue the actions, we AFFIRM.

No. 11-51106

## Background

In August 2004, SI Restructuring, Inc. (f/k/a Schlotzsky's Inc.) and certain affiliates (the "Debtors") filed for Chapter 11 bankruptcy protection. The Debtors retained Haynes and Boone, L.L.P. as counsel and, in December 2004, sold substantially all of their assets. Four months later, the committee of unsecured creditors (the "Committee") sought leave of court to pursue claims against the Wooleys, who were also creditors. After the bankruptcy court approved the request, the Committee initiated an adversary proceeding. The Wooleys then wrote a letter demanding that the Committee also pursue various state law claims against Haynes and Boone and five of the Debtors' outside directors (the "Directors"). The Committee responded by stating that it was in compliance with its duties and would continue to investigate potential causes of action.

Shortly after the correspondence between the Wooleys and the Committee, the Debtors filed a disclosure statement and a joint plan of liquidation (the "Plan"). The disclosure statement indicated that the Debtors' "chief remaining assets" were litigation claims, which included both existing claims and potential claims. The potential claims were separated into two sections: (1) "preference and other avoidance litigation" and (2) "potential litigation." Under the first section, the Debtors retained all "actions for the avoidance and recovery of estate property under Bankruptcy Code section 550, or transfers avoidable under Bankruptcy Code section 544, 545, 547, 548, 549, or 553(b)." The second section indicated that the Debtors "may be potential plaintiffs in other lawsuits, claims, and administrative proceedings" and would "continue to investigate potential claims to determine if they would be likely to yield a significant recovery for the Estates." The disclosure statement also recognized the Wooleys' contention "that additional claims should be asserted by the estates" and indicated that the

2

Wooleys retained "the right to seek authority from the Court to bring those actions on behalf of the Reorganized Debtor."

Section 7.7 of the Plan reflected the above language. Specifically, it provided that the Debtors retained "the exclusive right to enforce any claims, rights and causes of action that the Debtors or the Estates may hold against any entity, including, without limitation, any claims, rights or causes of action arising under Chapter 5 of the Bankruptcy Code or any similar provision of state law, or any other statute or legal theory." Section 7.7 also provided that "the Plan does not preclude the rights, if any, of creditors or shareholders to seek authority from the Bankruptcy Court to bring claims of the estates if not pursued by the Committee, the Debtors or the Plan Administrator." The bankruptcy court approved the Plan in April 2006.

The adversary action against the Wooleys continued after the Plan was approved. While the parties were in settlement discussions, the Wooleys wrote another letter, this time to the Plan Administrator, demanding that the Administrator pursue seven causes of action against both Haynes and Boone and the Directors. The Wooleys and the Plan Administrator ultimately reached an agreement regarding the Wooleys' desire to pursue the actions. The Wooleys agreed to withdraw all claims in the Debtors' case in exchange for a partial payment of funds, and the Plan Administrator agreed not to oppose the motion that the Wooleys planned to file seeking authority to pursue the actions on behalf of the Debtors.

On December 24, 2008, the Wooleys filed their motion requesting that the bankruptcy court "acknowledge and approve the derivative action or actions that [could] be brought on behalf of the Debtors' estate." The Wooleys argued that they had satisfied the requirements to pursue a derivative action because the claims they sought to assert were "colorable," and the Plan Administrator unjustifiably refused to pursue them. The bankruptcy court disagreed, finding

that the Wooleys did not have standing to bring the claims because the Plan did not specifically reserve those causes of action. After the district court affirmed, the Wooleys timely appealed to this court.

## Discussion

"We review the decision of the district court by applying the same standard to the bankruptcy court's findings of fact and conclusions of law that the district court applied." *Gen. Electric Capital Corp. v. Acosta* (*In re Acosta*), 406 F.3d 367, 372 (5th Cir. 2005). "A bankruptcy court's findings of fact are subject to review for clear error, and its conclusions of law are reviewed *de novo*." *Morrison v. W. Builders of Amarillo, Inc.* (*In re Morrison*), 555 F.3d 473, 480 (5th Cir. 2009).

Section 7.7 of the Plan reflects the general rule that a creditor, as a party in interest, has the right to seek authority to pursue causes of action on behalf of a debtor-in-possession. *See La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 247 (5th Cir. 1988) ("The law is well-settled that in some circumstances, a creditors' committee has standing under Title 11, United States Code, section 1103(c)(5) and/or section 1109(b) to file suit on behalf of a debtor-in-possession or a trustee." (footnote omitted)). A creditor may pursue claims for the debtor-in-possession if three requirements are met: (1) the claim is colorable, (2) the debtor-in-possession has refused unjustifiably to pursue it, and (3) the creditor obtains bankruptcy court approval to do so. *Id.* But a creditor can derive standing to bring a debtor's claim only if the debtor itself could bring the claim. Thus, the Wooleys' standing is contingent upon the Plan Administrator's standing. As explained below, the Plan Administrator does not have standing to pursue the post-confirmation actions the Wooleys seek to bring.

The filing of a Chapter 11 petition "creates an estate comprised of all the debtor's property, including 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 386 (5th Cir. 2009) (quoting 11

No. 11-51106

U.S.C. § 541(a)(1)). This includes causes of action belonging to the debtor. *Id.* ("We interpret 'all legal or equitable interests' broadly: The estate includes causes of action belonging to the debtor."). During the Chapter 11 case, the enforcement of these actions generally falls to the debtor-in-possession, which has "most of the powers of a bankruptcy trustee to pursue claims on behalf of the estate." *Dynasty Oil & Gas, LLC v. Citizens Bank* (*In re United Operating, LLC*), 540 F.3d 351, 355 (5th Cir. 2008). When a Chapter 11 plan is confirmed, however, the estate ceases to exist, and the debtor loses its status as debtor-in-possession along with its "authority to pursue claims as though it were a trustee." *Id.*

A debtor can preserve its standing to bring a post-confirmation action on a claim that once belonged to the estate only if the confirmed plan "expressly provides for the claim's 'retention and enforcement by the debtor.'" *Id.* (quoting 11 U.S.C. § 1123(b)(3)(B)). The debtor's ability "to enforce a claim once held by the estate is limited to that which has been retained in the plan." *Id.* (citation omitted). Without an effective reservation, "the debtor has no standing to pursue a claim that the estate owned before it was dissolved." *Spicer v. Laguna Madre Oil & Gas II, LLC* (*In re Tex. Wyo. Drilling, Inc.*), 647 F.3d 547, 550 (5th Cir. 2011); *see also In re United Operating, LLC*, 540 F.3d at 355 (noting that a debtor's loss of standing "is a logical consequence of the nature of a bankruptcy, which is designed primarily to secure prompt, effective administration and settlement of all debtor's assets and liabilities within a limited time" (internal quotation marks omitted)).

For a reservation to be effective, it "must be specific and unequivocal"—blanket reservations of "any and all claims" are insufficient. *In re United Operating, LLC*, 540 F.3d at 355–56 (internal quotation marks omitted). Though the degree of specificity involved in a plan's reservation of claims will often vary, the reservation must, at a minimum, be specific enough

to put "creditors on notice of any claim [the debtor] wishes to pursue after confirmation." *Id.* at 355. This notice "allows creditors to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it." *Id.* "[A]bsent specific and unequivocal retention language in the plan, creditors lack sufficient information regarding their benefits and potential liabilities to cast an intelligent vote." *In re Tex. Wyo. Drilling, Inc.*, 647 F.3d at 550 (citation omitted). In determining whether a proper reservation has been made, "courts may consult the disclosure statement in addition to the plan to determine whether a post-confirmation debtor has standing." *Id.* at 551.

The Plan and disclosure statement in this case lack the specificity necessary to retain the state law claims the Wooleys wish to assert. The claims reserved in Section 7.7 can be broken down into two categories, one general and one specific: (1) "any claims, rights and causes of action that the Debtors or the Estate may hold against any entity," and (2) "including . . . any claims, rights or causes of action arising under Chapter 5 of the Bankruptcy Code or any similar provisions of state law, or any other statute or legal theory." The Plan defines "causes of action" broadly to include "[a]ny and all claims, causes of action or rights to legal or equitable remedies, whether known or unknown, reduced to judgment or not, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise, including Avoidance Actions." "Avoidance Actions" are defined as "[a]ny and all rights, claims and causes of action arising under any provision of Chapter 5 of the Bankruptcy Code."

The Wooleys argue that the combination of Section 7.7 and the broad cause-of-action definition "unequivocally notifies the creditors that the debtor is retaining all common law claims, including those not known at the time of confirmation." But while the reservation is undoubtedly unequivocal, it is not

No. 11-51106

sufficiently specific. Here, the Plan is specific as to avoidance actions, but the Wooleys do not seek to bring a claim under Chapter 5 of the Bankruptcy Code. *Cf. Compton v. Anderson* (*In re MPF Holdings US LLC*), 701 F.3d 449, 457 (5th Cir. 2012) (finding that a reorganization plan sufficiently reserved avoidance actions by specifically referring to the Bankruptcy Code provisions that provided the basis for relief and by listing potential defendants in accompanying exhibits); *In re Tex. Wyo. Drilling, Inc.*, 647 F.3d at 552 ("We hold that where the plan and disclosure statement reserved the right to pursue the Avoidance Actions against pre-petition shareholders of TWD, the reorganized debtor specifically and unequivocally retained these claims under *In re United Operating*."). The principal claims the Wooleys wish to assert are for "breach of fiduciary duty by the Outside Directors and Haynes & Boone occurring before the bankruptcy was filed, when Haynes & Boone met with a subset of the Board in secret and counseled them about a plan of bankruptcy." Neither the Plan nor the disclosure statement references specific state law claims for fraud, breach of fiduciary duty, or any other particular cause of action. Instead, the Plan simply refers to all causes of action, known or unknown. As noted, such a blanket reservation is not sufficient to put creditors on notice. *See In re United Operating, LLC*, 540 F.3d at 356 ("Neither the Plan's blanket reservation of 'any and all claims' arising under the Code, nor its specific reservation of other types of claims under various Code provisions are sufficient to preserve the common-law claims Dynasty now brings for, *inter alia*, fraud, breach of fiduciary duty, and negligence.").[1] We

---

[1] We note that the Plan does not refer to Haynes and Boone or the Directors as potential defendants. Because the Plan fails to specifically reserve the state law claims, however, we need not decide whether the failure to identify prospective defendants alone is sufficient to preclude standing in a post-confirmation action. *Cf. In re Tex. Wyo. Drilling, Inc.*, 647 F.3d at 552 ("[W]e need not decide whether a debtor whose plan fails to identify *any* prospective defendants has standing to pursue post-confirmation claims against subsequently-named defendants.").

therefore agree with the bankruptcy court's determination that "the plan utterly fails to retain, with any specificity, these types of claims."

To avoid this result, the Wooleys contend that requiring a specific reference to unknown claims would create "an impossible burden on the reorganized debtor in making disclosure[s]." Specifically, the Wooleys argue that Haynes and Boone had breached their fiduciary duties by meeting in secret and discussing a proposed bankruptcy plan and that the Wooleys did not learn of this breach until after the Plan had been confirmed. This argument, however, ignores other facts that the Wooleys alleged to support their breach-of-fiduciary-duty claim. In addition to the "[f]ailure to fairly advise the entire [board of directors]," the Wooleys' motion claims that the two parties breached their fiduciary duties by failing "to Disclose Conflicts of interest, malpractice, [and] SEC violations" as well as by providing "inadequate process to consider proposals before rejecting Outside Equity Investment Opportunities." The bankruptcy court found that the Wooleys had knowledge of some of these facts as early as September 2005 when they wrote to the Committee.

Despite this knowledge, the Wooleys did not seek authority during the bankruptcy proceedings to pursue the claims. Nor did they object to the Plan on the grounds that it did not specifically reserve the state law claims. Instead, they waited until after the Plan was approved to attempt to exercise their right to bring an action on behalf of the Debtors. That the Wooleys later discovered an additional basis for their claims does not change the fact that they could have, and should have, advocated for the reservation of the causes of action they now wish to assert. Allowing the Wooleys to assert these claims simply because some of the underlying facts were unknown at the time the Plan was confirmed would be inconsistent with "the nature of a bankruptcy, which is designed primarily to secure prompt, effective administration and settlement of all

debtor's assets and liabilities within a limited time." *In re United Operating, LLC*, 540 F.3d at 355 (internal quotation marks omitted).

## Conclusion

The Plan did not specifically reserve the state law claims the Wooleys now wish to assert. Without this specific reservation, the Plan Administrator—and, by extension, the Wooleys—lack standing to pursue the proposed claims. Thus, the claims are not colorable, and the bankruptcy court did not err in denying the Wooleys' motion to pursue causes of action on behalf of the Debtors. The judgment of the district court is AFFIRMED.